1   DAVID R. SCHWARCZ, ESQ. (SBN 152896)
        (Dschwarcz@tfsr-law.com)
2   KATHRYN LEE BOYD, ESQ. (SBN 189496)
        (leeboyd.law@gmail.com)
3   RAJIKA L. SHAH, ESQ. (SBN 232994)
        (Rajika@tfsr-law.com)
4   TODD, FERENTZ, SCHWARCZ & RIMBERG, LLP
    6310 San Vicente Boulevard, Suite 360
5   Los Angeles, California 90048
    Phone: (323) 302-9488
6   Fax: (323) 931-4990

7   VARTKES YEGHIAYAN, ESQ. (SBN 41773)
        (vartkesy@sbcglobal.net)
8   YEGHIAYAN & ASSOCIATES
    535 N. Brand Boulevard, Suite 270
9   Glendale, California  91203
    Phone: (818) 242-7400
10  Fax: (818) 242-0114

11  MICHAEL BAZYLER, ESQ. (SBN 84398)
        (bazyler@aol.com)
12  CHAPMAN UNIVERSITY SCHOOL OF LAW
    One University Drive
13  Orange, California  92866
    Phone: (714) 628-2500
14  Fax: (714) 628-2576

15  Attorneys for PLAINTIFFS

16
                    UNITED STATES DISTRICT COURT
17           FOR THE CENTRAL DISTRICT OF CALIFORNIA

18
    Alex BAKALIAN; Anais           )   Case No. CV10 · 09596 (JTO(JENx))
19  HAROUTUNIAN; and Rita          )
20  MAHDESSIAN,                    )   COMPLAINT FOR
                                    )   1. UNLAWFUL
             Plaintiffs,            )   EXPROPRIATION;
21                                  )
        vs.                         )   2. UNJUST ENRICHMENT;
22                                  )   3. VIOLATION OF CAL. *CIVIL*
23  REPUBLIC OF TURKEY; CENTRAL    )   *CODE* § 1708;
    BANK OF THE REPUBLIC OF         )   4. CONSTRUCTIVE TRUST;
24  TURKEY; T.C. ZIRAAT BANKASI;    )   5. ACCOUNTING;
25  DOES 1-100,                     )   6. DECLARATORY RELIEF;
                                    )
             Defendants.            )
26                                  )   DEMAND FOR JURY TRIAL
                                    )
27

28

1  Alex BAKALIAN, Anais HAROUTUNIAN, and Rita MAHDESSIAN
2  (collectively, "Plaintiffs"), on information and belief, hereby allege as follows:

3
4  **<u>NATURE OF THE ACTION</u>**
5  1.     This is an action seeking fair market rents and other relief for Plaintiffs, the
6  rightful owners and their heirs of approximately 122.5 acres of property located in
7  the Adana region of Turkey, whose real property assets were unlawfully taken
8  from their ownership or control by theft, forced transfer, or exploitation during the
9  Armenian Genocide of 1915-23 which was perpetrated by the Ottoman Turkish
10  Empire, to which the Republic of Turkey ("Turkey") is a successor state.
11  2.     Plaintiffs are the lawful heirs of Armenian landowners who owned real
12  property and other assets in and around the city of Incirlik in the Adana region of
13  Turkey, approximately 250 miles southeast of Turkey's capital city of Ankara. A
14  prosperous region on the Mediterranean coast encompassing the old principality of
15  Cilicia, Adana was an independent Armenian state between the eleventh and
16  fourteenth centuries, for nearly 300 years. Until the Armenian Genocide in the
17  early part of the 20th century, Adana was home to a large and prosperous
18  commercial class of Armenians living under Ottoman Turkish rule. The Adana
19  region, including the city of Incirlik, has a long and popular history as a center
20  where Armenians had lived and owned property for centuries. The word "incirlik"
21  in Turkish means "place of fig trees" and is widely known in Turkey as an area
22  where Armenians lived and cultivated fig trees.
23  3.     Between 1915 and 1923, as part of the Armenian Genocide that took place
24  in the Ottoman Turkish Empire, these Armenian landowners in Adana were
25  murdered or deported or were forced to flee the country. The genocide survivors,
26  known today as the Armenian Diaspora, ultimately settled all around the world,
27  including in the United States. One of the largest communities of survivors is

28

1  located within this Judicial District, with the largest concentration in the cities of

2  Glendale and the East Hollywood area of Los Angeles.

3  4.    Beginning in 1915, the government of the Ottoman Turkish Empire began

4  ordering the collection of real and personal property and deportation of Turkish

5  Armenians.  A series of discriminatory regulations, directives, and decrees issued

6  by the Ottoman Turkish Empire between 1915 and 1923, collectively known as the

7  "Abandoned Property Laws", sought to provide legal cover for the unlawful

8  expropriation of the property and assets of Turkish Armenians, including that of

9  Plaintiffs.  For example, Article 2 of the May 16, 1915, Regulation on the

10  Confiscation and Redistribution of the Armenians' Goods Said "Abandoned" By

11  the Ministry of the Interior ("May 16, 1915 Regulation") provides that "After a

12  village or a city are deported, the houses and all real properties belonging to the

13  deported population, including the items they contain, shall be closed and

14  immediately put under seal by the employees authorized by the Administrative

15  Commissions and shall then be taken under protection." A true and correct copy of

16  the May 16, 1915 Regulation is attached as <u>Exhibit A</u> to this Complaint.

17  5.    In response to the outrage expressed by the international community over the

18  large-scale deportations, murders, and expropriation of property from Turkish

19  Armenians by the Ottoman Turkish government, government telegrams posted in

20  1916 demonstrate that proceeds from the sale of properties left behind by deportees

21  were deposited with Defendant T.C. Ziraat Bankası ("Ziraat Bank") – which was

22  founded by the Ottoman state in 1863 as an agricultural financial institution and is

23  operated with a state guarantee – and upon information and belief were held in

24  trust and for safekeeping on behalf of the rightful Armenian owners in accordance

25  with other Abandoned Property Laws. *See, e.g.,* Telegrams from the Directorate of

26  Ottoman Prime Ministry Archives, Code numbers 272.0.0.12 relating to "Tasfiye

27  Komisyon"s; 272.0.0.74 relating to Konya; 272.0.0.74 relating to Bursa;

28  272.0.0.74 relating to Afyon (Karahisar); 272.0.0.74 relating to Sivrihisar;

272.0.0.74 relating to Sivas; 272.0.0.74 relating to Yozgat; 272.0.0.74 relating to Izmit; *see also* Prime Ministry Directorate of Dissemination of Decisions, Decision No. 2/11873. True and correct copies of the Telegrams and Decision 2/11873 are attached as <u>Exhibit B</u> to this Complaint.

6.      In 1923, Turkey became the successor state to the Ottoman Turkish Empire.

7.      In 1928, new laws came into effect transferring all "abandoned" real and personal property to the Turkish Treasury. Since its establishment in 1856, the Imperial Ottoman Bank acted as the state Treasurer and was responsible for collecting state revenues. Defendant Central Bank of the Republic of Turkey ("Turkish Central Bank") was established in its present format in 1931 as the successor to the Imperial Ottoman Bank. Today, one of the primary duties of the Turkish Central Bank is its execution of Treasury operations.

8.      As a result, Plaintiffs' property not sold by the Ottoman Turkish Empire or Turkey is currently in the possession and use of Defendant Turkey.

9.      Plaintiffs allege that Defendant Ziraat Bank profited from its possession of their property between 1915 and 1928, including but not limited to the lease and/or sale of their property or other commercial banking activities based on Plaintiffs' property, and that Ziraat Bank is still in possession of those profits. In addition, Ziraat Bank violated its fiduciary duties to Plaintiffs as holder of property on their behalf.

10.     Plaintiffs additionally allege that, since at least 1928, Plaintiffs' real property and assets in Adana that were not sold have been continuously wrongfully owned and controlled by the Turkish government and used for commercial activities by Turkey and the Turkish Central Bank in conjunction with numerous private commercial enterprises operating both in the United States and elsewhere. Income earned from those properties, including rental income being paid by the United States Government to lease Plaintiffs' property, flows continuously into the Turkish Central Bank. Thus, Defendants Turkey and the Turkish Central Bank are

profiting from and being unjustly enriched by their possession of and /or use of proceeds from such stolen property belonging to Plaintiffs.

11.    International law forbids the taking of property of a state's own nationals when such taking is based on racial, ethnic, or religious grounds, and arises out of a genocide of the kind perpetrated against the Jews of Europe or the Armenians in Ottoman Turkey.

12.    Defendants, despite knowing, or reasonably having reasons to know, that Plaintiffs' properties in Adana were unlawfully taken from Armenians pursuant to a campaign of genocide against them based on ethnic and religious grounds, have nevertheless engaged, and continue to engage, in commercial activities using such genocide-taken properties and/or proceeds from the possession or sale of such properties.

13.    In summary, Defendants Ziraat Bank, Turkey, and the Turkish Central Bank have been profiting, and continue to unjustly profit, from the possession and commercial use of Plaintiffs' property and/or its proceeds, and all such unlawful profits have a commercial nexus with the United States. Plaintiffs bring this action against Defendants who have been unjustly enriched by their continuing possession and use of proceeds from stolen real property arising out of a genocide that rightly belongs to Plaintiffs.

## PARTIES

14.    Plaintiff Alex Bakalian is a resident of Washington, D.C., and lawful heir of three relatives, each of whom owned property in Turkey.  Alex Bakalian's first relative is his paternal grandfather, Dikran Bakalian, who was born in 1868 in Adana and died in June 1950 in Beirut, Lebanon.  Dikran Bakalian and his family were forced to flee in 1921, leaving behind all their possessions and properties. Dikran Bakalian was the owner of **Property 1**, a 95-donum property consisting of

arable fields located in Adana. One donum is approximately 1000 square meters or approximately ¼ acre (1 acre = 4046.86 square meters).

15.    Plaintiff Alex Bakalian's second relative is his paternal grandmother, Kalina Hatun (Gulenia) Shamassian. Kalina Shamassian was the owner of **Property 2**, a 90-donum parcel of arable land located in Adana. Born in 1892 in Adana, she married Dikran Bakalian in 1903. She died in Beirut, Lebanon, in 1978.

16.    Plaintiff Alex Bakalian's third relative is Ahsapet Shamassian (born Bouldoukian), the sister-in-law of his paternal grandmother. Ahsapet Shamassian was the owner of **Property 3**, a 130-donum parcel of arable land located in Adana. She was born in Adana, married Hovsep Shamassian (the brother of Kalina Hatun (Gulenia) Shamassian), and eventually settled in Damascus, Syria.

17.    Plaintiff Alex Bakalian also possesses the deed to **Property 4**, a three-bedroom building with one unit storefront on the ground floor, located in Adana.

18.    The Bakalian family left their homes and lands in 1921. At that time, the remaining surviving Armenians in Adana and other regions feared that their lives were in danger. The French army – which had been overseeing all of Cilicia, including Adana, as a mandate since the British forces turned over protection of the region in 1919 – withdrew in 1921 leaving the Armenians in Cilicia unprotected. Plaintiff Bakalian's family first moved south to Mersine, then to Izmir (Smyrna) in the far west of Turkey. They left Izmir in 1922 for Greece, escaping the massacres in Izmir and settling in Piraeus. In 1924 they moved to Beirut, Lebanon, to be with the large group of Armenians that settled there under the French protectorate.

19.    True and correct copies of the deeds to Properties 1, 2, 3, and 4 are attached hereto as Exhibits C, D, E, and F to this Complaint.

20.    Plaintiff Anais Haroutunian is a United States citizen and resident of Pasadena, California. Anais Haroutunian is the granddaughter and lawful heir of Apraham Geovderelian. Apraham Geovderelian was a wealthy farmer who owned

1  four pieces of property in Adana described here as Properties 5, 6, 7 and 8.

2  **Property 5** consists of 65 donums, **Property 6** consists of 52 donums, **Property 7**

3  consists of 40 donums, and **Property 8** consists of 3 donums. The four properties

4  consisted of arable fields.

5  21.     In 1915, Apraham Geovderelian and his wife Sara were killed, because they

6  were Armenian Christians. The Geovderelians had seven children. Three of their

7  children were also massacred. The remaining four children, 3 sisters and 1 brother,

8  including Plaintiff Anais Haroutunian's mother, were marched across the desert

9  without food or water and eventually became refugees without parents in Beirut,

10  Lebanon. These four children are now deceased.

11  22.     True and correct copies of the deeds to Properties 5, 6, 7, and 8 are attached

12  as Exhibits G, H, I, and J to this Complaint. The estimated locations of Properties

13  5, 6, 7, and 8 have been plotted on a recent satellite image of Adana. A true and

14  correct copy of the satellite image with the estimated locations of Properties 5, 6, 7,

15  and 8 is attached as Exhibit K to this Complaint.

16  23.     Plaintiff Rita Mahdessian is a United States citizen and resident of La

17  Crescenta, California, and lawful heir of Mihran Boyadjian, Sr. Mihran Boyadjian

18  Sr. and Plaintiff Rita Mahdessian's paternal grandfather, Onnig Madhessian, were

19  cousins. Mihran Boyadjian, Sr., owned two parcels of arable land in Adana:

20  **Property 9** consisting of 12 donums, and **Property 10** consisting of 9 donums.

21  24.     Mihran Boyadjian, Sr., also owned a large general goods store and was the

22  representative agent of the "ROSSIA" Insurance Company.  He and his family

23  were deported from their home in Adana in 1915.  Being wealthy, educated, and

24  well-connected, they were able to avoid many of the dangers of the roads and

25  eventually stayed in Hama, Syria. When the province of Adana was given to

26  France as a mandate under the protection of the French army at the end of World

27  War I, Mihran Boyadjian, Sr., returned to Adana to reclaim his home and

28  properties. However, when the French withdrew in 1921 and the region returned to

1 Turkey, surviving Armenians fled again in order to avoid a second wave of

2 deportations and massacre. Mihran Boyadjian, Sr., had to escape from Adana

3 again, with his family, and relocate to Hama-Homs, Syria. The family then moved

4 to Cyprus. Plaintiff Rita Mahdessian was born in Cyprus and is a cousin to Mihran

5 Boyadjian, Jr., the son of Levon Boyadjian, one of the five children of Mihran

6 Boyadjian, Sr.

7 25.    True and correct copies of the deeds to Properties 9 and 10 are attached as

8 Exhibits L and M to this Complaint. A true and correct copy of the certificate of

9 translation for the deeds referred to as Properties 1-10 is attached as Exhibit N.

10 26.    Defendant Republic of Turkey, as successor to the Ottoman Turkish Empire,

11 currently operates numerous state-owned commercial enterprises in the United

12 States, including business within this Judicial District.  For example, Turkish

13 Airlines, a state economic enterprise, has been operating services into the United

14 States since 1988 and announced in July 2010 that Los Angeles is its "West Coast

15 gateway" and that it will begin running nonstop service from Los Angeles

16 International Airport to Turkey in early 2011.  Additionally, the Turkish Culture

17 and Tourism Office, a division of the Ministry of Tourism, operates a Tourism

18 Information Office in Los Angeles and advertises throughout the United States for

19 travel to Turkey.

20 27.    The Turkish Central Bank is an agency or instrumentality of Turkey with its

21 principal place of business in Ankara, Turkey. The law creating the Turkish

22 Central Bank was passed in 1930; prior to that time, the Imperial Ottoman Bank

23 acted as the Treasurer of the state, collecting state revenues and making payments.

24 According to the 1930 Law on the Central Bank of the Republic of Turkey No.

25 1715, one of the duties of the Central Bank was to execute Treasury operations,

26 and according to the 1986 amended Article 41 of the Law on the Central Bank of

27 the Republic of Turkey No. 1211, "The [Central] Bank shall be the treasurer of the

28 government." (http://www.tcmb.gov.tr/yeni/eng/, "History" and "CBRT Law").

1  Defendant Turkish Central Bank is a joint-stock company with the majority of
2  shares belonging to the Turkish Treasury. It operates a representative office in New
3  York, from which it coordinates investment and commercial activity throughout
4  the United States. The Turkish Central Bank also distributes state funds to
5  government entities, including the Ministry of Tourism. Defendant Turkish Central
6  Bank does extensive business in the United States, including business within this
7  Judicial District.

8  28.    Plaintiffs are informed and believe and thereon allege that Ziraat Bank is an
9  agency or instrumentality of Turkey with its principal place of business in Ankara,
10  Turkey. Ziraat Bank operates U.S. correspondent banking services and offers retail
11  banking to its U.S. customers. Any individual may apply for and open an account
12  with the Ziraat Bank U.S. branch in New York. According to the Ziraat Bank
13  website, the U.S. branch "was established in 1983 with the purpose of enhancing
14  financial services for the Turkish community in the United States."
15  (www.ziraatnewyork.com). On its website, Defendant Ziraat Bank makes available
16  applications for standby and import letters of credit, which are aimed at soliciting
17  business from U.S. corporate banking customers and which can be accessed on the
18  Internet in Los Angeles, California. Defendant Ziraat Bank does extensive business
19  in the United States, including business within this Judicial District.

20  29.    As a result of their possession and use of Plaintiffs' property, the proceeds
21  from rent collected and/or the sale of Plaintiffs' property, and their business and
22  other commercial relationships, including parents, affiliates, and subsidiaries,
23  Defendants Turkey and the Turkish Central Bank have been unjustly enriched by
24  the unlawful expropriation and use of Plaintiffs' property. As a result of Defendant
25  Ziraat Bank's possession and/or use of Plaintiffs' property from 1915-1928, and its
26  business and other commercial relationships, including parents, affiliates, and
27  subsidiaries, Ziraat Bank has been unjustly enriched by the unlawful expropriation
28  and use of Plaintiffs' property.

30.   Plaintiffs are informed and believe and thereon allege that there are other Defendants holding proceeds derived from or benefiting from the expropriation and use of Plaintiffs' property.  The true names and capacities of Defendants named herein as DOES 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs, who therefore sues such Defendants by such fictitious names.  Each of the Defendants designated herein as DOE is negligently or otherwise legally responsible in some manner for the events and happenings herein referred to and caused injuries and damages proximately thereby to Plaintiffs, as herein alleged.  Plaintiffs will amend this Complaint to show true names and capacities when they have been ascertained.

## JURISDICTION AND VENUE

31.   This Court has subject matter and personal jurisdiction over Defendants Turkey, the Turkish Central Bank, and Ziraat Bank pursuant to 28 U.S.C. § 1330 and §§ 1604 and 1605 of the Foreign Sovereign Immunities Act ("FSIA"). Defendants Turkey, the Turkish Central Bank, and Ziraat Bank are not entitled to sovereign immunity in this suit pursuant to the sovereign immunity exceptions found in 28 U.S.C. § 1605(a)(2) and (3) of the FSIA. Defendants have purposely availed themselves of this forum.

32.   Plaintiffs' action is based upon the commercial activities carried out by Defendants Turkey, the Turkish Central Bank, and Ziraat Bank and DOES 1-50 in connection with Plaintiffs' property. Plaintiffs are informed and believe and thereon allege that Defendants Turkey, the Turkish Central Bank, and Ziraat Bank and DOES 1-50 are aware, or with reasonable diligence should have been aware, that they are engaging in commercial activities both inside and outside the United States, in connection with commercial activity carried on by Defendants in Turkey, and that their acts cause a direct effect in the United States. Defendants thereby

1  have unjustly profited and continue to unjustly profit from the unlawful use and

2  possession of Plaintiffs' property.

3  33.   Plaintiffs' property in Turkey is occupied in whole or in part by the Incirlik

4  Air Base, which leases the property from Turkey. The air base is operated by the

5  Army & Air Force Exchange Service, a commercial and financially self-sustaining

6  instrumentality of the United States Department of Defense receiving no funds

7  from the federal government, with its principal place of business in Dallas, Texas.

8  The air base in Incirlik has been in continuous operation since at least the 1950s

9  pursuant to periodic lease renewals. The air base contains a food court with

10 American restaurants including Baskin-Robbins, Taco Bell, Pizza Hut, and

11 Starbucks. Thus, as a result of Defendants' unlawful acts in the Adana region,

12 Americans pay rent to Defendants and spend money at commercial establishments

13 operating on an undivided improvement which sits atop property that rightfully

14 belongs to Plaintiffs. Defendants Turkey and the Turkish Central Bank are

15 therefore receiving profits and benefits directly from U.S. sources which are

16 generated by their commercial use of Plaintiffs' property. Defendants use the

17 proceeds derived from their unlawful use and possession of Plaintiffs' property to

18 engage in commercial activities in the U.S., including but not limited to solicitation

19 of business from the Army & Air Force Exchange Service.

20 34.   Defendant Ziraat Bank engaged in regular commercial banking activities

21 involving Plaintiffs' property during the entire period it held such property

22 pursuant to the Abandoned Property Laws. Plaintiffs are informed and believe and

23 thereon allege that the proceeds from such activities became commingled with

24 general bank funds and thus continue to form part of Ziraat Bank's stream of

25 revenue and proceeds.

26 35.   The expropriation of Plaintiffs' property in Turkey has resulted in a windfall

27 to Defendants through the commercial activities of leasing, issuing mortgages on

28 or otherwise using the land as collateral, and/or selling the land. As the rightful

owners of the land, Plaintiffs are suffering harm from the loss of use and proceeds from their property. Defendants Turkey and the Turkish Central Bank's continued unlawful use of the property causes a direct effect in the United States because a U.S. commercial entity pays money to Defendants Turkey and the Turkish Central Bank to lease the Incirlik Air Base and is engaged in a long-term business arrangement with Defendants or from which Defendants benefit regarding Plaintiffs' property.

36.    In addition, Defendant Ziraat Bank uses funds derived from its unlawful acts in carrying out its banking and solicitation activities in the U.S. The expropriation of Plaintiff's property in Turkey has resulted in unjust enrichment of Defendant Ziraat Bank through the commercial activities and benefits associated with the continued retention of proceeds from the initial unlawful sales of Plaintiffs' property.

37.    Plaintiffs' action is additionally based upon their rights in property unlawfully expropriated by Defendant Turkey in violation of international law, pursuant to a Turkish campaign of genocide based on racial, ethnic and religious grounds.  Proceeds from the possession, use, and/or sale of Plaintiffs' property are currently present in the United States in connection with Defendants' commercial activities carried on in the United States. Defendants are all currently engaged in commercial activities in the United States.

38.    International law prohibits the taking of property when it is done in a discriminatory way or pursuant to gross violations of human rights. Plaintiffs' property was taken pursuant to the genocidal campaign of the Ottoman Turkish Empire to destroy, in whole or in part, Armenian Christians in Turkey. The Turkish Armenian population was singled out from other Turkish citizens and was subjected to deportation, abduction, torture, massacre, and starvation. According to the website of the Armenian National Institute (www.armenian-genocide.org), "the great bulk of the Armenian population was forcibly removed from Armenia and

Anatolia to Syria, where the vast majority was sent into the desert to die of thirst and hunger. Large numbers of Armenians were methodically massacred throughout the Ottoman Empire. Women and children were abducted and horribly abused. The entire wealth of the Armenian people was expropriated." Approximately 1.5 million people died during the genocide. These acts, which were part of widespread and systematic attacks on the Armenian population, also constituted crimes against humanity. The expropriation of Plaintiffs' property pursuant to such acts violated *jus cogens* norms forbidding systematic racial discrimination and genocide and fell entirely on Armenians, and, as such, was unlawful and in violation of international law.

39.     As alleged herein, the property taken from Plaintiffs during the Armenian genocide, and the proceeds from such property, are currently held by Defendants. In the first years after the initial taking, Defendant Ziraat Bank was required under the Abandoned Property Laws to hold the property or proceeds from property of Armenians in trust on behalf of the rightful owners. In 1928, new Turkish laws authorized Defendant Ziraat Bank to turn over to the Treasury all the Armenian property it held.  Plaintiffs believe that their property was not held in the name of the rightful Armenian owners, and thus has been commingled with other property of Defendants. Additionally, the property itself has been sold and/or leased and what were once arable fields are now part of the Incirlik Air Base. Proceeds from the lease of Plaintiffs' land are held by Defendants Turkey and the Turkish Central Bank. All three Defendants –Turkey, the Turkish Central Bank, and Ziraat Bank – are currently engaged in commercial activities in the United States using commingled funds from Plaintiffs' property.

40.     Venue is proper within this Court because Defendants do business in Los Angeles County and/or because Defendants transact business with consumers who reside in Los Angeles County and the State of California. Additionally, Plaintiffs Anais Hartounian and Rita Mahdessian are residents of Los Angeles County.

1   Venue is also proper because no adequate alternative forum with any remedy exists
2   for Plaintiffs' claims, and any claim brought in the Republic of Turkey would be
3   futile.

4
5                           **FACTS COMMON TO ALL COUNTS**

6   41.    In the late nineteenth and early twentieth centuries many ethnic Armenians
7   living in the Ottoman Turkish Empire enjoyed prosperity. Many Armenians owned
8   real property and other assets within and around the province of Adana. In 1909,
9   Adana was the site of an infamous "Adana massacre," a precursor of the Armenian
10  genocide, where 30,000 men, women and children of Armenian descent living in
11  Adana were slaughtered.

12  42.    In approximately 1910, shortly after having gained power, a regime in the
13  Ottoman Turkish Empire known as the "Young Turks," along with a clique of
14  officers and technicians, secretly began to plan for the cleansing of all non-Turks,
15  including ethnic Armenians, from the Ottoman Turkish Empire.

16  43.    The Young Turks resolved to "deport and relocate" Armenians away from
17  population centers and into the deserts of Syria, then part of the Ottoman Turkish
18  Empire. By 1915, the "relocation" of Armenians served as a ruse for the genocide.
19  Using the fighting and bloodshed from the battles of World War I as a cover, the
20  government of the Ottoman Turkish Empire launched a systematic campaign to
21  destroy ethnic Armenians through a process of massacre and deportation, which is
22  now recognized as the Armenian Genocide.  As a result of this premeditated state-
23  sponsored campaign of genocide between 1915 and 1923, the ethnic Armenian
24  population of Ottoman Turkey was annihilated and only a small number survived
25  to reach Syria and elsewhere.

26  44.    As part of this genocidal campaign, the Young Turks instigated the
27  systematic transfer of Turkish Armenian-owned businesses, factories, shops,
28  farms, and all other economic enterprises into Turkish Muslim ownership.  In May

1   1915, the Young Turks issued a regulation stating that all real property belonging
2   to Armenians was to be considered abandoned property.  Further, on November 24,
3   1915, the Minister of the Interior sent an encrypted message to the Commission of
4   Clearance and Settlement of Adana, among others, where he "ordered that special
5   companies be formed for the real and temporal Armenian properties left behind by
6   the deportees in order to give their ownership to Muslims under color of law." A
7   true and correct copy of the November 24, 1915 encrypted message is attached as
8   Exhibit O to this Complaint.

9   45.    A circular letter dated January 11, 1916, from the Turkish Minister of
10  Commerce and Agriculture, Director-General of Commerce, specified 31 localities
11  throughout Turkey where Armenians resided and directed that all Armenian assets
12  in those localities were to be catalogued and administered by "Liquidation
13  Commissions" (Turkish Commissionou). In fact, the Liquidation Commissions
14  provided legal cover to give Turkish Muslims properties far below market rates,
15  assign immigrants to live in former Armenian houses, take over Armenian
16  factories, distribute Armenian crops to the military, and even use proceeds derived
17  from the sale of Armenian property to fund their deportation.

18  46.    Among the real property and other assets expropriated by the Ottoman
19  Turkish Empire as part of these Liquidation Commissions was Plaintiffs' property
20  in Adana.  The families of the Plaintiffs were all landowners of properties situated
21  in the Adana region, Turkey.  Their properties were confiscated by the Turkish
22  government after the families were removed from their homes. The expropriation
23  of property of Plaintiffs Haroutunian and Mahdessian occurred in 1915 when their
24  relatives were murdered and/or deported. The expropriation of property of Plaintiff
25  Bakalian occurred in 1921, when his grandparents were forced to flee after the
26  withdrawal of French troops from Cilicia.

27  47.    After World War I, resolutions were passed facially permitting Armenians to
28  return to Turkey, but the government actively blocked Armenian efforts to reclaim

the property that was allegedly held in trust on their behalf. Most were not able to return to their original homes. Turkey also treated Armenians as non-citizens, sending them out of the country and prohibiting their return by stamping their passports "Return interdit" (return prohibited). A true and correct copy of a cancelled Armenian passport is attached as <u>Exhibit P</u> to this Complaint.

48.    By 1921, the newly established nationalist government in Ankara was looking to complete the vision of the Young Turks to expel the Armenians. Armenians that returned were quickly run out of the country again. Without the protection of foreign or Allied powers, it was impossible for Armenians to try to reclaim their homes and property.

49.    In 1923, Turkey became the successor state of the Ottoman Turkish Empire.

50.    From the time Plaintiffs' property was expropriated until the present the property has been designated by Turkey as state-owned property, and leased and/or sold. The property and proceeds derived from the property were deposited first with Defendant Ziraat Bank, which continues to benefit from the proceeds it earned during the time of its possession, then turned over to Defendants Turkey and the Turkish Central Bank, who continue to possess Plaintiffs' property and/or the proceeds derived from the use and possession of such property.

51.    Restitution of the property is Plaintiffs' rightful remedy in international law for an unlawful taking. In lieu of restitution, Plaintiffs are entitled to damages, including replacement value. Plaintiffs' property totals approximately 122.5 acres, or 496 donums. In Turkey, one donum equals approximately 1,000 square meters. According to the United States Department of Defense Base Structure Report for fiscal year 2009, the plant replacement value (PRV) for the 3,337 acres that comprise Incirlik Air Base is USD $1.74 Billion. (http://www.defense.gov/pubs/pdfs/2009baseline.pdf, p. 93). Plaintiffs' 122.5 acres of property equals roughly 3.671% of the air base's total acreage and is therefore estimated to be worth at least $63,875,000.

52.   The facts and substance of this claim are not governed by any superseding international agreement or treaty between Turkey and the United States.

53.   Plaintiffs have no legal remedy or judicial forum within the Turkish legal system. Laws passed in 1928 and 1929 formally ended Turkey's disingenuous attempt at the restitution of immovable property to its rightful Armenian owners, and any funds transferred to the Treasury in relation to immovable property were recorded as revenue in the state budget. Only the value of the property as assessed in 1915 would be paid to verified landowners. Turkish courts have consistently ruled in favor of Turkey in quiet title actions involving former Armenian property.

## LEGAL AND EQUITABLE TOLLING

54.   No statute of limitations has begun to run on the Defendants' actions or on the Plaintiffs' legal right to seek compensation for properties taken as a result of the Armenian Genocide.

55.   Plaintiffs' claims are equitably tolled due to the extraordinary circumstances outside of their control that has made bringing suit for recovery of unlawfully expropriated property impossible until now. During and after World War I, the families of each of the Plaintiffs were forced to flee the Ottoman Turkish Empire – modern-day Turkey – leaving behind murdered family members and all of their movable and immovable property. The Abandoned Property Laws enacted by the Turkish government had the cumulative effect of preventing the return of Armenians as well as preventing any claim for compensation for the unlawful expropriation. In the decades following the genocide, the surviving Armenians were scattered throughout the world as refugees. Given the loss of home, family, belongings, and resources as a result of the genocide, and the hostile political and legal climate for Armenians in Turkey, it was impossible for Plaintiffs' predecessors to seek compensation for their stolen property or focus on anything but rebuilding their lives. Therefore, the extraordinary circumstances associated

1  with being diaspora heirs of Armenian Genocide survivors equitably tolls the

2  statute of limitations for Plaintiffs' claims.

3  56.    California *Code of Civil Procedure* § 354.45 also provides that any action by

4  a victim of the Armenian Genocide residing in California seeking payment for or

5  the return of assets deposited with and held by a bank, or looted assets such as real

6  property, may file an action on or before December 31, 2016. Plaintiff Anais

7  Hartounian resides in Pasadena, California, and Plaintiff Rita Mahdessian resides

8  in La Crescenta, California, and therefore additionally benefit from the extended

9  statute of limitations provided in § 354.45.

10

11                              **FIRST CAUSE OF ACTION**

12                              **UNLAWFUL EXPROPRIATION**

13  57.    Plaintiffs reallege and incorporate by reference, as though fully set forth

14  herein, each and every allegation set forth in paragraphs 1 through 56 above.

15  58.    Plaintiffs are informed, believe, and thereon allege that Defendants, prior to

16  the commencement of this action, wrongfully expropriated Plaintiffs' property

17  with the knowledge of Plaintiffs' lawful claim of ownership over the property in

18  violation of international law. Specifically, the unlawful expropriation was made

19  pursuant to a state-sponsored campaign of genocide, the purpose of which was to

20  exterminate in substantial part Armenians living in Ottoman Turkey and to drive

21  those that did not perish out of Turkey, as part of a campaign to create an

22  ethnically pure Turkish state. Such genocidal acts are violations of *jus cogens*

23  norms, which are universally accepted and are non-derogable.

24  59.    Defendants continue to wrongfully and knowingly use, profit from, transfer,

25  convey, improve upon, and acquire Plaintiffs' property acquired through the

26  genocide in a manner which is adverse and inconsistent with Plaintiffs' lawful

27  rights of ownership.

28

60.     Any demand made by Plaintiffs for return, possession, restitution, and compensation would be futile, since Turkish law and Turkish government policy prevents heirs of Armenian genocide victims from obtaining the return of their properties.

61.     As a result of Defendants' unlawful expropriation of the Plaintiffs' property, Plaintiffs are entitled to recovery of the current fair market replacement value of the properties plus the accrued reasonable rental value.

## SECOND CAUSE OF ACTION
## RESTITUTION FOR UNJUST ENRICHMENT

62.     Plaintiffs reallege and incorporate by reference, as though fully set forth herein, each and every allegation set forth in paragraphs 1 through 56 above.

63.     As alleged herein, Defendants have received the benefits of Plaintiffs' property and assets as set forth above.

64.     Defendants have been unjustly enriched, and further, it would be inequitable for Defendants to be allowed to retain the proceeds from the use of Plaintiffs' assets and property without being ordered to disgorge the profits from the use of those assets and property.

## THIRD CAUSE OF ACTION
## VIOLATION OF CALIFORNIA *CIVIL CODE* § 1708

65.     Plaintiffs reallege and incorporate by reference, as though fully set forth herein, each and every allegation set forth in paragraphs 1 through 56 above.

66.     Defendants violated California *Civil Code* § 1708, which states: "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights."

67.     As a direct and legal cause of Defendants' violation of *Civil Code* §1708, Defendants have been unjustly enriched at Plaintiffs' expense and have caused

1  Plaintiffs to incur damages and injuries to their rights and property resulting from

2  Defendants' wrongful conversion and use of Plaintiffs' property.  Accordingly,

3  Plaintiffs seek all legal and equitable remedies to compensate them for Defendants'

4  violation of *Civil Code* § 1708, including without limitation actual damages and/or

5  restitution.

6

7                    **FOURTH CAUSE OF ACTION**

8                      **CONSTRUCTIVE TRUST**

9  68.    Plaintiffs reallege and incorporate by reference, as though fully set forth

10 herein, each and every allegation set forth in paragraphs 1 through 56 above.

11 69.    Plaintiffs are informed and believe that Defendants have taken title and/or

12 come into possession of various assets which belonged to Plaintiffs.  As a result of

13 Defendants' acquisition, control and use of Plaintiffs' property, without Plaintiffs'

14 consent, Defendants have been unjustly enriched as alleged herein.

15 70.    As a result of Defendants' unjust enrichment arising from its use and

16 possession of Plaintiffs' property described herein, a Constructive Trust exists

17 wherein Defendants are the constructive trustees of all property and assets

18 belonging to Plaintiffs and Defendants are therefore under a duty to convey said

19 property to Plaintiffs as the beneficiaries of the constructive trust.  Accordingly, a

20 Constructive Trust exists as to all of Plaintiffs' property.

21

22                      **FIFTH CAUSE OF ACTION**

23                          **ACCOUNTING**

24 71.    Plaintiffs reallege and incorporate by reference, as though fully set forth

25 herein, each and every allegation set forth in paragraphs 1 through 56 above.

26 72.    Plaintiffs are informed and believe and thereon allege that Defendants have

27 wrongfully taken title and/or possession to certain assets and property belonging to

28 Plaintiffs and have been unjustly enriched as alleged herein.  Claimants' property

1    totals approximately 122.5 acres (496 donums), and based on the DOD's plant

2    replacement value, it is estimated to be worth at least $63,875,000 (Sixty Three

3    Million Eight Hundred and Seventy Five Thousand Dollars) plus the accrued

4    reasonable rental value. However, due to the complicated nature of Defendants'

5    accounts and businesses, which are known to Defendants and unknown to

6    Plaintiffs, and to avoid manifest injustice by preventing Plaintiffs from recouping

7    those profits unlawfully converted by Defendants, Plaintiffs are entitled to an

8    accounting to determine the amount of restitution and/or damages owed to

9    Plaintiffs by Defendants.

10    73.    The exact nature and extent of the assets and property of the Plaintiffs and

11    the amounts which are due to the Plaintiffs cannot be ascertained without an

12    accounting of all records, books, and accounts regarding all of the Plaintiffs'

13    property and the profits obtained by Defendants from their use and conversion of

14    Plaintiffs' property.

15

16                          **SIXTH CAUSE OF ACTION**

17                          **DECLARATORY RELIEF**

18    74.    Plaintiffs reallege and incorporate by reference, as though fully set forth

19    herein, each and every allegation set forth in paragraphs 1 through 56 above.

20    75.    There is a real dispute between the parties as to whether Defendants are

21    unjustly profiting from property belonging to Plaintiffs and as to the amount of the

22    unjust enrichment and the nature and value of the assets and property belonging to

23    the Plaintiffs.  Consequently, Plaintiffs seek a judicial declaration that they are the

24    owners of certain real property and other assets, the proceeds of which are

25    presently in Defendants' use, possession, and/or control and that Plaintiffs are

26    entitled to restitution based on Defendants' unjust enrichment and profits arising

27    from Defendants' use, possession, and/or expropriation of Plaintiffs' property.

28

## **PRAYER**

Wherefore, Plaintiffs pray for judgment and relief against Defendants as follows:

1.      For compensatory and punitive damages in an amount within the jurisdictional limits of this Court according to proof;

2.      For the current fair market replacement value of their expropriated property, estimated to be at least $63,875,000 plus the accrued reasonable rental value.

3.      For an accounting of profits, as ordered by this Court;

4.      For loss of profits, according to proof;

5.      For restitution based on Defendants' unjust enrichment, according to proof;

6.      For the imposition of a constructive trust;

7.      For declaratory relief as requested herein;

8.      For costs of suit;

9.      For costs expended by Plaintiffs in pursuit of their property pursuant to California *Civil Code* § 3336;

10.     For injunctive relief to prevent Defendants' continuing unjust enrichment; and

11.     For such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury on all issues to which they are entitled to have tried by jury.

Dated: December 14, 2010      **TODD, FERENTZ, SCHWARCZ &**
**RIMBERG, LLP**

By: _K. Lee Boyd /RLS_
       K. LEE BOYD
       Attorney for Plaintiffs

# EXHIBIT A

## May 16 1915 Regulation on the confiscation and redistribution of the Armenians' goods said "abandoned" by the Ministry of the Interior (34 articles)

**Article 1**  "The commissions on abandoned goods constituted under the above-mentioned articles shall act according to the instructions pertaining to properties and real properties abandoned by the deported Armenians."

**Article 2**  "After a village or a city are deported, the houses and all real properties belonging to the deported population, including the items they contain, shall be closed and immediately put under seal by the employees authorized by the Administrative Commissions and shall then be taken under protection"

**Article 3**  "The quality, the quantity and the estimated price of the items taken under protection as well as the names of their owners shall be inscribed in details in a register, then the things shall be transported to church, to school, to Khan and in the warehouses, and will be preserved separately in such a way that the owner of each item will not be confused. A report shall be written about the owners as well as the goods to verify their origin and destination. The original of this report must be given to the local authorities and the exact certified copy to the Administrative Commissions of Abandoned Goods."

**Article 5**  "The mobile goods that, with time, deteriorate, or the domesticated animals shall be sold at public auctions through the mediation of under-commissions designated by the Commission and the profits shall be remitted to the deposits, the Treasury of the Ministry of Finance, in the name of the owners, if they are known, or in the name of the village or the city where those sales occur if the owners are unknown.
The quality, the quantity, the value, the name of the owner, the client's name, the purchase price, shall be registered in details in a register and approved by the commission that directed the auctions.
A police report shall be prepared and the original submitted to the local government, the administrative commission on abandoned goods."

**Article 6**  "The objects found in churches, the images and sacred books shall be inscribed at the register. A police report shall be addressed and kept locally. When a part of the deported population shall be installed in whichever location, the objects having belonged to each village shall be restored to them."

**Article 7**  "The quality and quantity of each property and of each abandoned good shall be registered in a register, with their value in the name of the owners and a list of the abandoned real properties shall be drafted in each village and each area from the local administrative commission."

**Article 8**  "In the event perishable harvests and articles of food are found in houses or buildings, they shall be sold at public auctions that shall then be remitted as the profits and the profits made shall be deposited in the Treasury of the Ministry of Finance, in the name of the owners, and a police report will be drafted. The original shall be remitted to the local authorities and a copy to the Administrative Commission."

**Article 9**  "In the event where there would be no purchasers for the harvest of the field or the vine-growing productions, an agreement shall be concluded on the harvest and the merchandises shall be sold to the claimants by means of adjudication. The profits remitted after its sale at the rental shall be remitted to the deposits, the treasure of the Ministry of Finance in the name of the owners."

Article 10        "No transaction shall take place under power of attorney if the deported
                  Armenian owners have given this power of attorney to sell those goods after the date of
                  their deportation "

Article 11        "Turkish Mouhadjirs (refugees) shall be installed in the houses and on the land
                  of the deported Armenians
                  Depending on their agricultural abilities a receipt shall be delivered to them "

Article 12        "The registration of the settled Mouhadjirs (refugees) shall be detailed and
                  regular  The names, the age, the arrival date of those who receive homes shall be
                  transcribed in a registrar  They shall be given a receipt indicating the quantity and size of
                  the properties and lands entrusted to them "

Article 13        "The mouhadjirs shall be solely responsible for the protection of the houses and
                  trees in the villages, the amount of damages occasioned shall be exacted from the entire
                  village population and those who have done these damages shall be estranged and
                  deprived of the advantages granted to the mouhadjirs "

Article 14        "After having distributed the houses to the mouhadjirs, the nomad tribes shall be
                  housed in the surplus homes and formalities shall be done for their fate for the
                  mouhadjirs "

Article 15        "While housing the mouhadjirs in the houses of the deported Armenians from
                  the cities and villages, priority shall be given to the inhabitants of cities and districts, in
                  regards to their economic conditions and their constructive abilities  they shall be given
                  lands in sufficient quantity "

Article 16        "Boutiques  commercial houses  inns, public baths, consignment and
                  buildings of that sort that are not suitable for the installation of the mouhadjirs as well as
                  the surplus buildings and other buildings left out of usage and mouhadjirs houses  shall be
                  auctioned, according to article 18 by the Administrative Commission, where it exerts
                  control, through the means of an organism constituted by state employees and
                  representatives of the Ministry of Finance "

Article 17        "The mouhadjirs constituted in the cities and districts shall be registered in a
                  registrar for an official statistic  In those registrars will be compared their names the
                  quality of the living given to them, their size and value "

Article 18        "In the event where we shall need specialists capable of preventing and fixing
                  the value of the vines the gardens  the olive fields or mulberry real estate lands  in the
                  cities and villages distribute to them a fair guarantee according to their worth, also for
                  security estate goods and land to return and deliver to the material to them only
                  All real estate goods of that sort that still that have not been given to the mouhadjirs
                  shall be sold at public auction according to the article 16 "

Article 19        "Apart from the mouhadjirs that are on the lists it is forbidden without special
                  authorization delivered by the local authorities, or by the Ministry of the Interior  if
                  it is necessary to prepare the official papers of those who wish to have their destination
                  for Armenian cities and villages "

Article 20        "Those who wish to purchase to use or lands must take care of their children
                  fulfil their engagements or occasion damages, they must offer a guarantee in return the
                  damages, it is possible to give those lands and those houses for a term but a term not
                  exceeding two years"

Article 21        "Lists must be set up of all the buildings and lands acquired either by purchase or by rental, or by adjudication, of their quality, their size, their location, their purchase of rental price with detailed information of the clients and tenants."

Article 22        "The profits realized by the sale or rental of the properties shall be remitted into deposits to the Treasury of the Ministry of Finance, in the name of the owners and then shall be remitted to the owners according to ulterior regulations."

Article 23        "The remittance and the administrative arrangements of all the goods of the deported Armenians of cities and villages shall take place according to those rules. Those formalities are under the direct competence of the Administrative Commission on abandoned goods."

Article 24        "These administrative commissions, for all that concern the administrative arrangements of the abandoned goods refer solely and directly to the Ministry of the Interior and act according to the orders they receive and execute. They inform of it the local authorities."

Article 25        "Will be formed as many commissions as necessary to execute the stipulations of these orders and after authorization of the Minister of the Interior, the designated state employees shall operate according to those directives. Under the shield of the Ministry of the Interior, regulations and explanations shall be elaborated by the administrative commissions of abandoned goods and copies shall be sent to the Ministry of the Interior and to the local authorities."

Article 26        "It is the duty of the state employees of the administrative commission on abandoned goods to do diverse formalities to house some inconstancies in the homes of the deported Armenians. To fasten these formalities must be designated inspectors in order to establish investigations and take ... with consulting the local authorities, execution decisions. It is part of the attributes of the Administrative Commission on abandoned goods."

Article 27        "The commissions were required to present, at least once ... fifteen days, a first report of their activities with their observations, their conclusions, their decisions to the Ministry of Interior and to the Government."

Article 28        "The Administrative Commission on abandoned goods, during the exercise of their functions, shall abide to those orders and given rules."

Article 29        "The members of the Administrative Commission on abandoned goods are jointly and severally liable during the time of their activities for the ... of operations of the administration and the preservation of the abandoned goods of lands."

Article 30        "The Administrative Commission on abandoned goods is composed of a president specially designated and of two members, one of which is designated among the civil state employees of the city and the other, among the state employees of Finances (Minister of Finance)."

Article 31        "The President of the Administrative Commission on abandoned goods or a person designated by him manages the correspondence in the name of the President."

Article 32        "The President of the Administrative Commission on abandoned goods shall, if he judges it necessary, assign one of the members of the commission, in accordance to those rules, to conduct an investigation or an inquest or a control or ... and to exercise his power."

Article 33.        "The President of the Administrative Commission on absentees' goods earn on a daily basis a pound and a half and the members, a pound, deducted on the sums affected to the mouhadjirs; they shall receive traveling expenses, if they go to other Districts.

Article 34.        In the districts where no commission is designated the local central authority has the duty to designate somebody according to those instructions.

# EXHIBIT B

10

DIRECTORATE OF OTTOMAN PRIME MINISTRY ARCHIVES

Date:          March 24, 1916

Code:          272.0.0.12

Place Code:    36.12.17

Informing the "Tasfiye Komisyon"s [Sale Commissions, dealing with the property belonging to those deported] that the Ziraat bank branches will provide lists and that work should be done commensurate to those lists provided by the bank branches.

10

[Page 1]

Ziraat bank has informed the General directorate of Tribes and Immigrants on February 4, 1916 (1331) that the Commissions will receive lists [of properties left behind by deportees] through the bank's branches, and that those lists should be used by the commissions in order to complete their work.

272-12-36-12-17

11

DIRECTORATE OF OTTOMAN PRIME MINISTRY ARCHIVES

Date:           February 4, 1916

Code:           272 0.0.74

Place Code:     64.2.19

The sums deposited at the coffers of <u>Konya</u> from the sale of properties left behind by deportees had been transferred to Ziraat bank.

11

[Page 1]

Telegram sent by the Konya Commission dealing with the properties left behind by deportees. The sums deposited at the coffers Konya from the sale of properties left behind by deportees had been transferred to Ziraat bank.

272-74-64-2-19

12

DIRECTORATE OF OTTOMAN PRIME MINISTRY ARCHIVES

Date:            February 4, 1916

Code.            272.0.0.74

Place Code:      64.2.19

Regarding the sums deposited at the coffers **Bursa** from the sale of properties left behind by deportees had been transferred to Ziraat bank.

12

[Page 1]

Telegram sent by the <u>Bursa</u> Commission dealing with the properties left behind by deportees. The sums deposited at the coffers <u>Bursa</u> from the sale of properties left behind by deportees had been transferred to Ziraat bank.

272-14-64-2-16

13

DIRECTORATE OF OTTOMAN PRIME MINISTRY ARCHIVES

Date:           January 1, 1916

Code:           272.0.0.74

Place Code:     64.2.17

Regarding the sums deposited at the coffers **Afyon [Karahisar]** from the sale of properties left behind by deportees had been transferred to Ziraat bank.

13

[Page 1]

Telegram sent by the **Afyon [Karahisar]** Commission dealing with the properties left behind by deportees. The sums deposited at the coffers **Afyon [Karahisar]** from the sale of properties left behind by deportees had been transferred to Ziraat bank.

272-74-64-2-17

14

DIRECTORATE OF OTTOMAN PRIME MINISTRY ARCHIVES

Date:          January 1, 1916

Code:          272.0.0.74

Place Code:    64.2.15

Regarding the sums deposited at the coffers **Sivrihisar** from the sale of properties left behind by deportees had been transferred to Ziraat bank.

14

[Page 1]

Telegram sent by the <u>Sivrihisar</u> Commission dealing with the properties left behind by deportees. The sums deposited at the coffers <u>Sivrihisar</u> from the sale of properties left behind by deportees had been transferred to Ziraat bank.

272-74-64-2-15

15

DIRECTORATE OF OTTOMAN PRIME MINISTRY ARCHIVES

Date:            January 29, 1916

Code:           272.0.0.74

Place Code:    64.2.13

Regarding the sums deposited at the coffers **Sivas** from the sale of properties left behind by deportees had been transferred to Ziraat bank.

15

[Page 1]

Telegram sent by the Sivas Commission dealing with the properties left behind by deportees. The sums deposited at the coffers Sivas from the sale of properties left behind by deportees had been transferred to Ziraat bank.

272-74-64-2-13

16

DIRECTORATE OF OTTOMAN PRIME MINISTRY ARCHIVES

Date:          January 28, 1916

Code:          272.0.0.74

Place Code:    64.2.12

Regarding the sums deposited at the coffers **Yozgat** from the sale of properties left behind by deportees had been transferred to Ziraat bank.

16

[Page 1]

Telegram sent by the **Yozgat** Commission dealing with the properties left behind by deportees. The sums deposited at the coffers **Yozgat** from the sale of properties left behind by deportees had been transferred to Ziraat bank.

272-74-64-2-12

17

DIRECTORATE OF OTTOMAN PRIME MINISTRY ARCHIVES

Date:          January 28, 1916

Code:          272.0.0.74

Place Code:    64.2.11

Regarding the sums deposited at the coffers Izmit from the sale of properties left behind by deportees had been transferred to Ziraat bank.

17

[Page 1]

Telegram sent by the <u>Izmit</u> Commission dealing with the properties left behind by deportees. The sums deposited at the coffers <u>Izmit</u> from the sale of properties left behind by deportees until the end of 1331 (1916) had been transferred to Ziraat bank.

272-74-64-2-11

19

Regarding the Coton [Circir] manufacturing facility which had been reverted to the ownership of Ziraat Bank in <u>Adana</u>, and not being assigned to private ownership as an establishment.

Republic of Turkey

Prime Ministry

Directorate of Dissemination of Decisions

Decision No.: 2/11873

DECISION

In a note written by the Ministry of Commerce, dated August 28, 1939, and bearing the serial number 4893/10627, the two **Circir** manufacturing facilities in [the city of] <u>Adana</u>, [the Ministry makes it clear that since the establishments [in question] being unable to pay what they owe and thus [their ownership] having been reverted to the above mentioned bank [Ziraat Bank, Adana Branch], and, furthermore, having been outside the purview of normal enterprises, and thus, having operated with loss, which makes the bank unable to deal with them, the bank had informed that it had sold one of the facilities and is in the process of selling the other [second]. The bank had informed the pertinent authorities about this. Since the second facility has not yet been sold, the bank informs that in accordance with article 26 of law number 3460, the establishment under question will cost a lot to bring it to an operating condition.

This issue has been meticulously discussed during the meeting of the Cabinet on September 4, 1939. The cabinet decided to consider the establishment in question to be exempt from the dictates of point 1 of article 26 of law number 3460, in accordance with and commensurate to the content of section 2 of the same law.

Signatures

EXHIBIT B
42

# EXHIBIT C

Bakalian 004

In the Presence of your Majesty's Illustrious Provincial Protector

Request from your humble servant,

Gentlemen, in light of the fact that I was unable to successfully acquire the deed for ninety seven *dönüms* [1 dönüm = approx. ¼ acre] of land from one sector in the village of Incirlik, that I purchased last year from Kalosyan Avidis *Efendi,* it is my humble request that with this application an order of dispatch be presented to the office of imperial instruments, for a certified copy [of said deed], exchangeable with the original, to be delivered to me from the directorship of Imperial Registrar.  18 October 1919

Bakkâlyan

Dikran

To the Directorship office of Tax and Imperial Registrar, 19 October 1919

*Dönüm*: 95

Public : 8451

[To] Dikran *Efendi,* son of Bakkâl Kiragos Ağa of the village of Incirlik, the registration of the referenced land inserted above exactly as indicated, has been tendered to the office of Imperial Registrar.

(ink stamp and signature)

Translated document by Fatima Sakarya Sept. 13, 2010

**EXHIBIT C**
**43**

Bakalian 005

| DATE | VILLAGE | TYPE | DŐNÜM [1 dőnüm = approx. ¼ acre] |
|------|---------|------|------|
| 20 July 1918 | Incirlik | Arable field from formerly State-owned land | 95 |

| BOUNDARY | GRANTOR | CONSIDERATION OF TRANSFER |
|----------|---------|---------------------------|
| Eastward, public road; | Absolute transfer from | 12000 |
| Westward, Mihâil's heirs; | Avadis *Efendi*, son of Kalusyan | (Gold stamped coin) |
| Northward, Zaruhî; | Haji  Asadur Ağa | |
| Southward, land owned by | | |
|   Süleyman Ağa | | |

**POSSESSOR**

Dikran Efendi, son of Bakkâl Kiragos Ağa

In accordance with the July 1918 registration, row number 25, of 95 *dőnüms* of land from a sector in the village of Incirlik in the name of Dikran Efendi, son of Bakkâl Kiragos Ağa, the boundaries of which are identified above, in exchange for the receipt of a 190 *kurush* sum that is owed and filed in the land register, as calculated by the tax office from the value of 95,000 kurush, the receipt stamp registered below is linked and [debt is] canceled and [proof] given to petitioner.  23 October 1919.

(paper stamps and signature)

Translated document by Fatima Sakarya *Sakarya* Sept. 13, 2010

**EXHIBIT C**

**44**

BAKALIAN 004

Huzur-ı Sâmî-i Cenâb-ı Vilâyet-penâhîye

Ma'rûz-ı bendeleridir,

Kalosyan Avidis Efendiden geçen sene İncirlik karyesinden iştira eylediğim bir kıtada doksan yedi dönüm tarlanın tapu senedinin ahzına muvaffak olamadığımdan sened-i hâkânî makamına kâim olmak üzere aslından suret-i musaddakının işbu istidama ihracıyla tarafıma itası hususunun Defter-i Hâkânî müdüriyetine emr ü havale buyurulması müsterhimdir efendim. 18 Teşrîn-i evvel 337.

Bakkâlyan

Dikran

Vergi ve Defter-i Hâkânî müdüriyetlerine, 19 Teşrîn-i evvel 337.

Dönüm: 95

Umumîsi: 8451

İncirlik karyesinde Bakkâl Kiragos Ağa mahdumu Dikran Efendi mezkûr tarlanın kaydı aynen bâlâya derc edilerek Defter-i Hâkânî idaresine tevdi kılındı.

(mühür ve imza)

EXHIBIT C
45

BAKALIAN 005

| TARİH | KARYESİ | CİNSİ | DÖNÜMÜ |
|---|---|---|---|
| 20 Temmuz 336 | İncirlik | Arazi-i emîriyeden tarla | 95 |

| HUDUDU | CİHET-İ İTASI | BEDEL-İ FERAĞI |
|---|---|---|
| Şarkan tarîk-i âmm | Kalusyan Hacı Asadur | 12000 |
| Garben Mihâil veresesi | Ağa mahdumu Avadis | (sikke-i madeniye-i altın) |
| Şimâlen Zaruhî | Efendinin katiyen | |
| Cenuben Süleyman Ağa | ferağından | |
| Tarlası | | |

**MUTASARRIFI**

Bakkâl Kiragos Ağa

mahdumu Dikran Efendi

Hudut kaydı aynen bâlây derc edilen İncirlik karyesinde bir kıtada doksan beş dönüm tarla Bakkâl Kiragos Ağa mahdumu Dikran Efendi namına Temmuz 336 tarih ve 25 sıra numaralı kayıt mucibince mukayyit olup maa-tahrir-i vergi idaresinden çıkarılan 95000 kuruş kıymetten alınması lazım gelen 190 kuruş resm-i kaydiye bi'l-ahz mukabilinde zire kaydiye ilmühaber pulu ilsak ve iptal edilerek müstedi yedine ita kılındı. 23 Teşrîn-i evvel 337

(pullar ve imza)

EXHIBIT C

46

# EXHIBIT D

Bakalian 002

### Imperial Document

| | |
|---|---|
| Ledger Month | : November 1908 |
| Volume number | : 45 |
| Page number | : 33 |
| Provincial Subdivision | : Adana |
| Provincial District | : Adana |
| Village | : Incirlik |
| Category | : Arable field |
| Type | : From formerly state-owned land |
| Boundary | : Eastward Kürkçüler, Westward Mazur Ağa's heirs, Northward bridge (?), Southward public road |
| Amount | : Ninety *dönüm-I atîk* only (dönüm = approx. 1/4 acre, 'atik' = 'old'), thirty three *dirhem-i şinik* [dirhem = drachma=1/400 of an okka. Şinik=1/4 bushel of grain] |
| Granting instrument | : The children of the late *Musullu* Mihaîl, Osep and Krikor and *** and Rakil and Miss Kilina, acting on their own behalf, and in accordance with an executorship dated 15 September 1910 given by Osep in a court of law, his mother Miss Azabet acting with the firm[i] consent of the parties, upon the modification of the instrument dated November 1907. |
| Possessor | : Miss Kilina, daughter of Mihaîl Ağa |
| Nationality | : Ottoman |
| Charge (Value) | : 1910 |

Whereas the land, which is identified in details and registration written above, has been registered in the name of Miss Kilina, daughter of Mihaîl in the Imperial Registrar for the sum of one thousand nine hundred and ten *kurush,* on the condition that the annual legal fees are paid to the appropriate authority, therefore this imperial instrument has been set forth and granted.

August 1908

(ink stamp and signature)

**EXHIBIT D**
**47**

Translated document by Fatima Sakarya *[signature]* Sept. 13, 2010

Bakalian 006

## Imperial Instrument

| | | |
|---|---|---|
| Row Number | : | 196/185 |
| Ledger Month | : | November 1908 |
| Volume Number | : | 45 |
| Page Number | : | 37 |
| Provincial Subdivision | : | Adana |
| Provincial District | : | Adana |
| Township | : | |
| Village | : | Incirlik |
| Category | : | Arable field |
| Type | : | From formerly state-owned land |
| Boundary | : | Eastward, Kürkçüler; Westward Mazur Ağa heirs; Northward, from *kefiye* (??), Southward, public road. |
| Amount | : | Ninety *dőnüm-I atîk* [1 dőnüm=approx. ¼ acre, 'atik'= 'old']; thirty three dirhem [dirhem = drachma= 1/400 of an okka] two *evlek-I cedîd* [1 evlek = ¼ dőnüm, 'cedid' refers to 'modern'] |
| Former Owner | : | |
| Granting Instrument | : | The children of the late *Musullu* Mihaîl Ağa, Osep and Krikor and *** and Rakil and Miss Kilina, acting on their own behalf, and in accordance with an executorship dated 15 September 1910 given by Osep in a court of law, his mother Miss Azabet acting with the firm[ii] consent of the parties, upon the modification of the instrument dated November 1907. |
| Possessor | : | Miss Kilina, daughter of Mihaîl Ağa |
| Nationality | : | Ottoman |
| Charge (Value) | : | 1910 |

**THE WRITING IS TOO FADED IN THIS PART, MAKING IT ILLEGIBLE.**

November 1908

(ink stamp and signature)

**EXHIBIT D**
**48**

Translated document by Fatima Sakarya ~~Sakarya~~ Sept. 13, 2010

BAKALIAN 002

## SENED-İ HÂKÂNÎ

| | |
|---|---|
| **DEFTER-İ ŞEHR** | : TEŞRİN-İ SÂNÎ 1326 |
| **CİLT NUMARASI** | : 45 |
| **SAYFA NUMARASI** | : 33 |
| **LİVA** | : Adana |
| **KAZA** | : Adana |
| **KARYE** | : İncirlik |
| **CİNSİ** | : Tarla |
| **NEV'İ** | : Arazi-i mîri |

**HUDUDU** : Şarkan Kürkçüler, garben Mazur Ağa veresesi, şimalen köprü(?), cenuben tarîk-i âmm.

**MİKTARI** : Yalnız doksan dönüm-i atîk, otuz üç dirhem-i şinik(?)

**CİHET-İ İTA-YI SENET** : Müteveffa Musullu Mihâil evlatları Osep ve Kirkor ve *** ve Rakil ve Kilina Hatuna asaleten ve Osep tarafından mahkeme-i şer'iyeden verilen 15 Eylül 328 tarihli vesayet mucibince validesi Azabet Hatunun bi'l-vesâye beyn-el-şüreka rıza-yı nezd-i tasnim(?) Teşrîn-i sânî 325 tarihli senetlerinin tebdiliyle

**MUTASARRIFI** : Mihâil Ağa kızı Kilina Hatun

**TABİİYETİ** : Tebaa-i Osmaniye

**BEDELİ (KIYMETİ)** : 1910

Bâlâda evsaf ve suret-i kaydı muharrer bin dokuz yüz on kuruş kıymetli tarla Defter-i Hâkânî idaresince Mihâil Ağa kızı Kilina Hatun namına kayıt olunmakla her sene aşâr-ı şer'iyesi memurine eda etmek üzere işbu sened-i hâkânî tanzim ve ita kılındı.

Ağustos 326

(mühür ve imza)

BAKALIAN 006

### SENED-İ HÂKÂNÎ

SIRA NUMARASI: 196/185

DEFTER-İ ŞEHR      : TEŞRİN-İ SÂNÎ 326

CİLT NUMARASI      : 45

SAYFA NUMARASI     : 37

LİVA               : Adana

KAZA               : Adana

NAHİYE             :

KARYE              : İncirlik

CİNSİ              : Tarla

NEV'İ              : Arazi-i emîriye

HUDUDU             : Şarkan Kürkçüler, garben Mazur Ağa veresesi, şimalen kefiyeden(?),
cenuben tarîk-i âmm.

MİKTARI            : Yalnız doksan dönüm-i atîk, otuz üç dirhem iki evlek-i cedîd.

SAHİB-İ EVVELİ     :

CİHET-İ İTA-YI SENET : Müteveffa Musullu Mihâil Ağa evlatları Osep ve Kirkor ve *** ve Rakil ve
Kilina Hatuna asaleten ve Osep tarafından mahkeme-i şer'iyeden verilen 15 Eylül 328 tarihli vesayet
mucibince validesi Azabet Hatunun bi'l-vesâye beyn-el-şüreka rıza tasnim(?) Teşrîn-i sânî 325 tarihli
senetlerinin tebdiliyle

MUTASARRIFI        : Mihâil Ağa kızı Kilina Hatun

TABİİYETİ          : Tebaa-i Osmaniye

BEDELİ (KIYMETİ)   : 1910

BU BÖLÜM ÇOK SİLİK OLDUĞUNDAN OKUNAMADI

Teşrîn-i sânî 326

(mühür ve imza)

EXHIBIT D
50

# EXHIBIT E

Bakalian 003

## Imperial Instrument

| | | |
|---|---|---|
| Row Number | : | 114 |
| Ledger Month | : | September 1903 |
| Volume Number | : | |
| Page Number | : | |
| Provincial Subdivision | : | Adana |
| Provincial District | : | Adana |
| Township | : | Üreğir |
| Village | : | Incirlik |
| Category | : | Arable field |
| Type | : | From formerly state-owned land |
| Boundary | : | Eastward, the heirs of Salif Efendi; Westward, son of Civur; Northward, public roads; Southward, wall [? *Setm*?] |
| Amount | : | 130 *dőnüm* only [1 *dőnüm* = approx. ¼ acre] |
| Former Owner | : | The sons of Terdikyan Agop Ağa, citizen of the Ottoman Empire, Boğos, Terkiya and Dikran Efendis. |
| Granting instrument | : | As required in accordance with identification presented from both parties, and the instrument dated January 1895, ****that set out clearly that abandonment and suspension had not occurred. |
| Possessor | : | Miss Ağsabet, daughter of Avavid Ağa, son of Molidlu |
| Nationality | : | Ottoman |
| Charge (Value) | : | 4850 |

Whereas [the property] whose identifying details and registration are written above has been registered in the name of Ağsabet, daughter of Avavid Ağa, son of Molidlu, in the Imperial Registrar for the sum of four thousand eight hundred and fifty, only, on the condition that the annual legal fees ****of 81 *kurush* are paid, therefore this imperial instrument has been set forth and granted.

August 1908

**EXHIBIT E**
51

Translated document by Fatima Sakarya *[signature]* Sept. 13, 2010

[~~Bakian~~ Bakalian 003, page two]

(ink stamp and signature)

Issued as required, based upon an affidavit, dated 24 May 1918 stating the imperial instrument had been destroyed by accident and an order dated 29 December 1911 and numbered 339/379 from the illustrious office.

EXHIBIT E
52

Translated document by Fatima Sakarya _Sakarya_ Sept. 13, 2010

BAKALIAN 003

## SENED-İ HÂKÂNÎ

**SIRA NUMARASI:** 114

**DEFTER-İ ŞEHR** : EYLÜL 321

**CİLT NUMARASI** :

**SAYFA NUMARASI** :

**LİVA** : Adana

**KAZA** : Adana

**NAHİYE** : Üreğir

**KARYE** : İncirlik

**CİNSİ** : Tarla

**NEV'İ** : Arazi-i emîriyeden

**HUDUDU** : Şarkan Salif Efendi vereseleri, garben Civur oğlu, şimalen tarîk-i âmm, cenuben setm(?).

**MİKTARI** : Yalnız yüz otuz dönüm

**SAHİB-İ EVVELİ** : Tebaa-i devlet-i âliyeden Terdikyan Agop Ağa mahdumları Boğos ve Terkiya ve Dikran Efendiler

**CİHET-İ İTA-YI SENET** : Tarafeynden vürud eden ilmühaber ile Kanun-ı sânî 313 tarihli senet mucibince *** terk ve tatil olunmadığı tebyin eyledikleri cihetle

**MUTASARRIFI** : Molidlu oğlu Avavid Ağa kerimesi Ağsabet Hatun

**TABİİYETİ** : Osmanlı

**BEDELİ (KIYMETİ)** : 4850

Bâlâda evsaf ve suret-i kaydı muharrer yalnız dört bin sekiz yüz elli Defter-i Hâkânî idaresince Molidlu oğlu Avavid Ağa kerimesi Ağsabet namına kayıt olunmakla her sene aşâr-ı *** 81 kuruş etmek üzere işbu sened-i hâkânî tanzim ve ita kılındı.

Ağustos 326

(mühür ve imza)

24 Mayıs 336 tarihli ilmühaberinde kazaen sened-i hâkânîyi zayi eylediği makamât-ı celilenin 339/379 numaralı ve 29 Kanun-ı evvel 329 tarihli emirnamesi mucibince verilmiştir.

**EXHIBIT E**
53

# EXHIBIT F

Bakalian 001

Imperial Registrar

Official Instrument of Sale and Transfer of Property

September 1908

| | | |
|---|---|---|
| Row Number | : | 16 |
| Provincial Subdivision | : | Adana |
| Provincial District | : | Adana |
| Town and Village | : | Adana city center |
| Quarter | : | Karataş |
| Number of sectors | : | One sector |
| Row Number | : | 163 |
| Monthly Ledger | : | August 1908 |
| Offer pertaining to | : | Simple Real Property |
| Type of real property | : | Three room building with one unit storefront on ground floor |
| Boundary | : | As detailed in the register. |
| Debtor | : | Representative agent***** of Miss Katrina, daughter of Mihâil, her creditor, the aforesaid Davud Ağa |
| Creditor | : | Haji Davud Ağa, butcher Davudlaryan |
| Term | : | One year starting 4 September 1908 |
| Amount of debt | : | 7182, seven thousand one hundred eighty two *kurush*, only |

This official instrument sets forth the settlement of a account for a building with single storefront located on the ground floor as depicted on a deed which describes the boundaries [of said property] as mentioned above, which by the individuals aforementioned, who by legal methods and in true performance, sell and take into possession [said property] for a sum equivalent to seven thousand one hundred eighty *kurush* . The obligation shall be met during a term of one year.  The seller shall deliver to and take delivery from Miss Katrina, daughter of Mihâil and upon acknowledgment and confirmation, in the course of the aforementioned term, after payment and delivery by the debtor of the entire sum of the aforementioned amount due, and also upon the release of the building and storefront, the duties and obligations of the agreement ****will have thus been fulfilled and the aforementioned sale will have thus been realized.

August 1908

(ink stamp and signature)

**EXHIBIT F**
**54**

Translated document by Fatima Sakarya _[signature]_ Sept. 13, 2010

BAKALIAN 001

## DEFTER-İ HÂKÂNÎ

## BEY' VE FERÂGA MAHSUS SENED-İ RESMÎDİR

EYLÜL 1326

| | |
|---|---|
| SIRA NUMARASI | : 16 |
| LİVA | : Adana |
| KAZA | : Adana |
| KASABA VE KARYE | : Nefs-i Adana |
| MAHALLE | : Karataş |
| ADED-İ KITAAT | : Bir kıta |
| SIRA NUMARASI | : 163 |
| DEFTER-İ MÂH | : Ağustos 326 |
| NEV-İ ARZ | : Sırf mülk |
| CİNS-İ EMLÂK | : Üç odalı hane ve tahtında bir bâb dükkân |
| HUDUDU | : Defterinde muharrer olduğu vech üzere |
| MEDYUN Ağa olduğu | : Mihâil kerimesi Katrina Hatun, mezburun vekili *** dayin-i merkum Davud |
| DAYİN | : Davudlaryan Kasap Hacı Davud Ağa |
| MÜDDET | : 4 Eylül 326 tarihinden itibaren bir sene müddetle |
| MİKTAR-I DEYN | : 7182, Yalnız yedi bin yüz seksen iki kuruş |

Ber-vech-i bâlâ bir kıta tapu senet mantukunca bâlâda mübeyyinü'l-hudud mâlik olduğu hane ve tahtında bir bâb dükkân mezkûru her birerleri vech-i şer'i üzere yedi bin yüz seksen iki kuruş mukâbilinde bir sene müddetle vefâen bey' edip ve dahi vefaen iştirâ' ve kabz etmekle bâyi Mihâil kerimesi Katrina Hatuna teslim ve tesellüm edip ol vechile ikrâr ve tasdik etmeleriyle müddet-i mezkûr mürurunda medyûn olduğu meblağ-i mezburu tamamen eda ve ifa eyledikte müşteri dahi hane ve dükkânı reddetmek üzere alâ-tarîk-il vefa akdetmeleriyle *** mezbure vechile bey'-i bi'l-vefa kabilinden bir muamele olacağını mübeyyin işbu sened-i resmî ita olundu.

Ağustos 326

(mühür ve imza)

# EXHIBIT G

Haroutunian 001

## Imperial Instrument

| | | |
|---|---|---|
| Registration Number | : | 263 |
| Value | : | 11000 |
| Province | : | Adana |
| Provincial Subdivision | : | Adana |
| Township | : | Adana |
| Village | : | Incirlik |
| Realty Number | : | 9644 |
| Category | : | Arable field |
| Type | : | From formerly state-owned land |
| Amount | : | Sixty five *atik dőnüm* only [1 dőnüm = approx. ¼ acre. 'atik' = 'old'] |
| Boundary | : | Eastward, highway; Southwestward [in the direction of Mecca] Vanoyan and partially Boğos heirs; Northward, the land of the Gőkdereliyan Markar heirs; Eastward (this should be Southward) bounded by the stream. |

**PRECAUTIONARY MEASURES TAKEN REGARDING REAL PROPERTY OF THE POSSESSOR**

While the sixty five *dőnüm* only, land from Gőkdereliyan Abraham Ağa, Ottoman citizen, of the Haji Hamid neighborhood was in his possession for agricultural use under instrument dated March 1910, the settlement of a loan from Ziraat Bank for which there was insufficiency of debt payment, despite good faith transfer of sums of money, lead to the sale [of the land] by way of auction. The court of first instance conveyed the instrument on 17 August 1914 by official memorandum numbered 302 to the purchaser Kirmanzâde Süleyman Ağa which was registered in his name in August 1914 in the minutes under row number 52, thereby transferring the instrument. Later it appears from the written comments in the registration plans, that in accordance with the rulings and orders from the head administrator dated 7 April 1919 and numbered 1078, and from the provincial office, dated and numbered from 15 May 1917, a reformulation of the aforementioned transfer resulted in its return to the former owner. With Abraham Ağa's death in 1912, [the land became the] exclusive [property of] the wife Sara and son Sahak and daughters Rakil and Liya and Vanuhi. As the aforementioned Sara passed away also in 1913, this post-corrective instrument is hereby transmitted in accordance with the permit memorandum dated 28 February 1919, numbered 2/79 bestowed by the tax office, to the aforementioned son Sahak and daughters Rakil and Liya and Vanuhi, as certified by voucher arrived from the village.

**EXHIBIT G**
56

Translated document by Fatima Sakarya *Sakarya* Sept. 13, 2010

[Haroutunian 001, page two]

| Possessor's Name and Alias | Location of Birth | Date of Birth | Nationality and Ethnicity | Father's Nationality, Name and Alias | Mother's Nationality and Name |
|---|---|---|---|---|---|
| Son, Sahak and daughters Rakil and Liya and Vanuhi, registered in the dwelling number 58 in the neighborhood of Haji Hamid | Adana<br>Adana<br>Adana<br>Adana | 1902<br>1892<br>1894<br>1898 | Ottoman Armenian | Ottoman Abraham | Ottoman Sara |

This imperial instrument declares, sets forth and conveys that the real property, whose details and boundaries are written above, has been registered in the Imperial Registrar under the responsibility of the aforementioned [individuals].  28 February 1919

(paper stamp, ink stamp and signature)

**EXHIBIT G**
57

Translated document by Fatima Sakarya *[signature]* Sept. 13, 2010

HAROUTUNIAN 001

### SENED-İ HÂKÂNÎ

KAYIT NUMARASI    : 263

KIYMETİ           : 11000

VİLÂYETİ         : Adana

LİVASI            : Adana

KAZASI           : Adana

KARYESİ        : İncirlik

EMLÂK NUMARASI  : 9644

CİNSİ             : Tarla

NEV'İ             : Arazi-i emîrîyeden

MİKTARI        : Yalnız altmış beş dönüm-i atîktir.

HUDUDU       : Şarkan şose tarîki, kıbliyetenVanoyan ve kısmen Boğos vereseleri, şimalen Gökdereliyan Markar vereseleri tarlası, şarkan (cenuben olması gerek) dere ile mahduttur.

MAL-I GAYR-I MENKULÜN MUTASARRIFINCA  VUKUA GELEN VECH-İ TAKAYYÜDÂTI  :

Yalnız altmış beş dönüm tarla tebaa-i Osmaniye'den Hacı Hamid mahallesinde Gökdereliyan Abraham Ağanın Mart 328 tarihli senet mucibince taht-ı ziraat ve tasarrufunda iken Ziraat Bankası'dan istikrâz eylediği mebâlige mukâbil vefâen ferag ederek deynin adem-i tesviyesine karşı bi'l-müzayede ihale kılındığından senedinin itasına dair merkez bidâyet mahkemesi tarafından mevrûd 17 Ağustos 332 tarihli ve 302 numaralı tezkere mucibince müşterisi Kirmanzâde Süleyman Ağa namına Ağustos 332 zabıt defterinin 52 sıra numarasına kaydı icra ve senedi ita kılınmış ve âhiren Baş Edminstratör'lüğün(?) 7 Nisan 919 tarih ve 1078 numaralı ve makam-ı vilâyetin 15 Mayıs 335 tarih ve numaralı kararname ve emirnameleri mucibince ferag-ı mezkûrun addiyle sahib-i evveli namına ibkâ' edildiği kayıtları planındaki meşruhattan anlaşılmış ve Abraham Ağanın 330 tarihinde vefatıyla zevcesi Sara ve oğlu Sahak ve kerimeleri Rakil ve Liya ve Vanuhi'ye münhasır olduğu mezbure Sara'nın dahi 331 tarihinde vefatı cihetle oğlu merkum ve kızları mezburuna intikâl eylediği karyeleri tarafından mevrûd ilmühaberle vergi idaresinden mu'ti 2/79 numaralı 28 Şubat 337 tarihli ruhsat tezkeresi mucibince işbu senet ba'de't-tashih intikalen verilmiştir.

| MUTASARRIFIN İSİM VE ŞÖHRETİ | MAHALL-İ VELÂDETİ | TARİH-İ VELÂDETİ | TABİİYET VE CEMAATİ | BABASININ TABİİYET VE İSİM VE ŞÖHRETİ | ANASININ TABİİYET VE İSMİ |
|---|---|---|---|---|---|
| Hacı Hamid mahallesinin 58 mesken numarasında mukayyit oğlu Sahak ve kerimeleri Rakil ve Liya ve Vanuhi | Adana Adana Adana Adana | 320 310 312 316 | Tebaa-i devlet-i âliyyeden Ermeni | Tebaa-i devlet-i âliyyeden Abraham | Tebaa-i devlet-i âliyyeden Sara |

Bâlâda muharrer evsâf ve hududu hâvî mal-ı gayr-ı menkul Defter-i Hâkânî'ce merkum ve mezburun uhdesine kaydedilmiş olduğunu mübeyyin işbu sened-i hâkânî tanzim ve ita kılındı. 28 Şubat 337

(pul, mühür ve imza)

# EXHIBIT H

Haroutunian 002

## Imperial Instrument

| | |
|---|---|
| Registration Number | : 264 |
| Value | : 10750 |
| Province | : Adana |
| Provincial Subdivision | : Adana |
| Township | : Adana |
| Village | : Incirlik |
| Realty Number | : |
| Category | : Arable field |
| Type | : From formerly state-owned land |
| Amount | : Fifty-two *dönüm-i atik*, only [1 *dönüm* = approx. ¼ acre, 'atik'='old'] |
| Boundary | : Eastward, private road; Westward, stream; in the direction of Mecca [southwest] Boğos and Vayvayan heirs; Northward, stream and partially bordered by the heirs of Boğos. |

**PRECAUTIONARY MEASURES TAKEN REGARDING REAL PROPERTY OF THE POSSESSOR**

While the fifty-two *dönüm* only, land from Gökdereliyan Abraham Ağa, Ottoman citizen, of the Haji Hamid neighborhood was in his possession for agricultural use under instrument dated March 1910, and it was neither abandoned nor suspended, the settlement of a loan from Ziraat Bank for which insufficiency of debt payment arose, despite good faith transfer of sums of money lead to the sale [of the land] by way of auction. The judicial board of the court of first instance conveyed the instrument on 17 August 1914 by official memorandum numbered 302 to the purchaser Mehmet Ağa, son of Demirci Şaban which was registered in his name in August 1914 in the minutes under row number 54, thereby transferring the instrument. Later it appears from the written comments in the registration plans, that in accordance with the rulings and orders from the head administrator dated 7 April 1919 and numbered 1078, and from the provincial office, dated 15 May 1917 and numbered 252, a reformulation reversing the aforementioned transfer resulted in its return to the former owner. With Abraham Ağa's death in 1912, [the land became the] exclusive [property of] the wife Sara and son Sahak and daughters Rakil and Liya and Vanuhi. As the aforementioned Sara passed away also in 1913, this post-corrective instrument is hereby transmitted in accordance with the permit memorandum dated 28 February 1919, numbered 2/79 bestowed by the tax office, to the aforementioned son Sahak and daughters Rakil and Liya and Vanuhi, as certified by voucher arrived from the village and neighborhood.

**EXHIBIT H**
**60**

Translated document by Fatima Sakarya *[signature]* Sept. 13, 2010

[Haroutunian 002, page two]

| Possessor's Name and Alias | Location of Birth | Date of Birth | Nationality and Ethnicity | Father's Nationality, Name and Alias | Mother's Nationality and Name |
|---|---|---|---|---|---|
| Son, Sahak and daughters Rakil and Liya and Vanuhi, registered in the dwelling number 58 in the neighborhood of Haji Hamid | Adana Adana Adana Adana | 1902 1892 1894 1898 | | Ottoman Abraham | Ottoman Sara |

This imperial instrument declares, sets forth and conveys that the real property, whose details and boundaries are written above, has been registered in the Imperial Registrar under the responsibility of the aforementioned [individuals].  28 February 1919

(paper stamp, ink stamp and signature)

**EXHIBIT H**

61

Translated document by Fatima Sakarya ~~Sakarya~~ Sept. 13, 2010

HAROUTUNIAN 002

**SENED-İ HÂKÂNÎ**

| | |
|---|---|
| **KAYIT NUMARASI** | : 264 |
| **KIYMETİ** | : 10750 |
| **VİLÂYETİ** | : Adana |
| **LİVASI** | : Adana |
| **KAZASI** | : Adana |
| **KARYESİ** | : İncirlik |
| **EMLÂK NUMARASI** | : |
| **CİNSİ** | : Tarla |
| **NEV'İ** | : Arazi-i emîrîyeden |
| **MİKTARI** | : Yalnız elli iki dönüm-i atîktir. |

**HUDUDU**         : Şarkan tarîk-i hâs, garben dere, kıbliyeten Boğos vereseleriyle Vayvayan, şimalen dere ve kısmen Boğos vereseleriyle mahduttur.

**MAL-I GAYR-I MENKULÜN MUTASARRIFINCA   VUKUA GELEN VECH-İ TAKAYYÜDÂTI   :**

Yalnız elli iki dönüm tarla tebaa-i Osmaniye'den Hacı Hamid mahallesinde Gökdereliyan Abraham Ağanın Mart 328 tarihli senet mucibince taht-ı ziraat ve tasarrufunda olup terk ve tatil olmadığı halde Ziraat Bankası'ndan istikrâz etmiş olduğu mebâliğe mukâbil vefâen ferag ederek deynin adem-i tesviyesinden naşi karşı bi'l-müzayede ihale kılındığından senedinin itasına dair merkez bidâyet mahkemesi riyasetinden mevrûd 17 Ağustos 332 tarih ve 302 numaralı tezkere mucibince müşterisi Demirci Şaban oğlu Mehmet Ağa namına Ağustos 332 zabıt defterinin 54 sıra numarasına kaydı icra ve senedi ita kılınmış ve âhiren Baş Edminstratör'lüğün(?) 7 Nisan 919 tarih ve 1078 numaralı ve makam-ı vilâyetin 15 Mayıs 335 tarih ve 252 numaralı kararname ve emirnameleri mucibince ferag-ı mezkûrun ke-en-lem-yekûn addiyle sahib-i evveli namına ibkâ' edildiği kayıtları planındaki meşruhattan anlaşılmış ve Abraham Ağanın 330 tarihinde vefatıyla zevcesi Sara ve oğlu Sahak ve kerimeleri Rakil ve Liya ve Vanuhi'ye münhasır olduğu mezbure Sara'nın dahi 331 tarihinde vefat eylediği cihetle oğlu merkum ve kızları mezburuna intikâl eylediği karyeleri ve mahalleleri tarafından mevrûd ilmühaberle vergi idaresinden mu'ti 2/79 numaralı 28 Şubat 337 tarihli ruhsat tezkeresi mucibince işbu senet ba'de't-tashih intikalen verilmiştir.

**EXHIBIT H**
**62**

| MUTASARRIFIN     İSİM     VE ŞÖHRETİ | MAHALL-İ VELÂDETİ | TARİH-İ VELÂDETİ | TABİİYET VE CEMAATİ | BABASININ TABİİYET VE İSİM VE ŞÖHRETİ | ANASININ TABİİYET VE İSMİ |
|---|---|---|---|---|---|
| Hacı Hamid mahallesinin 58 mesken numarasında mukayyit oğlu Sahak ve kerimeleri Rakil ve Liya ve Vanuhi | Adana Adana Adana Adana | 320 310 312 316 | | Tebaa-i devlet-i âliyyeden Abraham | Tebaa-i devlet-i âliyyeden Sara |

Bâlâda muharrer evsâf ve hududu hâvî mal-ı gayr-ı menkul Defter-i Hâkânî'ce merkum ve mezburun uhdesine kaydedilmiş olduğunu mübeyyin işbu sened-i hâkânî tanzim ve ita kılındı. 28 Şubat 337

(pul, mühür ve imza)

# EXHIBIT I

Haroutunian 004

## Imperial Instrument

| | | |
|---|---|---|
| Registration Number | : | 266 |
| Value | : | 7000 |
| Province | : | Adana |
| Provincial Subdivision | : | Adana |
| Township | : | Adana |
| Village | : | Hiristiyan |
| Realty Number | : | 8044 |
| Category | : | Arable field |
| Type | : | From formerly state-owned land |
| Amount | : | Forty *atîk dönüm* only[1 *dönüm* = approx. ¼ acre, 'atik' = 'old'] |
| Boundary | : | Eastward, field of the Markar heirs; Westward, field of Yusuf, son of Abdo; in the direction of Mecca, public road; Northward, the heirs of son of Dobur and the field of Kiragos, son of Kahya. |

### PRECAUTIONARY MEASURES TAKEN REGARDING REAL PROPERTY OF THE POSSESSOR

While the forty *dönüm* only, land from Gökdereliyan Abraham Ağa, Ottoman citizen, of the Haji Hamid neighborhood was in his possession for agricultural use under instrument dated March 1910, and it was not abandoned nor suspended, by reason of his death in 1912, [the land became] exclusive [property of] the wife Sara and son Sahak and the aforesaid daughters Rakil and Liya and Vanuhi. Afterwards, with the death of the aforementioned Sara also in 1913, [the land] was transmitted to the aforesaid son Sahak and aforesaid daughters Rakil and Liya and Vanuhi which the present instrument reflects in accordance with the permit memorandum dated 28 February 1919, numbered 2/79 bestowed by the tax office, as certified by voucher arrived from his village and neighborhood.

| Possessor's Name and Alias | Location of Birth | Date of Birth | Nationality and Ethnicity | Father's Nationality, Name and Alias | Mother's Nationality and Name |
|---|---|---|---|---|---|
| Son, Sahak and daughters Rakil and Liya and Vanuhi, registered in the dwelling number 58 in the neighborhood of Haji Hamid | Adana Adana Adana Adana | 1902 1892 1894 1898 | Ottoman Armenian | Ottoman Abraham | Ottoman, Sara |

Translated document by Fatima Sakarya *[signature]* Sept. 13, 2010

**EXHIBIT I**
**64**

[Haroutunian 004, page two]

This imperial instrument declares, sets forth and conveys that the real property, whose details and boundaries are written above, has been registered in the Imperial Registrar under the responsibility of the aforementioned [individuals].  28 February 1919

(paper stamp, ink stamp and signature)

---

[i] The term "tasnim" in the original is believed to be a misspelling of 'tasmim' which translates to 'firm resolution'.
[ii] the word 'tasnim' in the original is believed to be a misspelling of 'tasmim' which translates to 'firm resolution'.

Translated document by Fatima Sakarya _Sakarya_ Sept. 13, 2010

**EXHIBIT I**
**65**

HAROUTUNIAN 004

### SENED-İ HÂKÂNÎ

**KAYIT NUMARASI** : 266

**KIYMETİ** : 7000

**VİLÂYETİ** : Adana

**LİVASI** : Adana

**KAZASI** : Adana

**KARYESİ** : Hıristiyan

**EMLÂK NUMARASI** : 8044

**CİNSİ** : Tarla

**NEV'İ** : Arazi-i emîrîyeden

**MİKTARI** : Yalnız kırk dönüm-i atîktir.

**HUDUDU** : Şarkan Markar vereseleri tarlası, garben Abdo oğlu Yusuf tarlası, kıbliyeten tarîk-i âmm, şimalen Dobur oğlu vereseleriyle Kahya oğlu Kiragos tarlası..

**MAL-I GAYR-I MENKULÜN MUTASARRIFINCA  VUKUA GELEN VECH-İ TAKAYYÜDÂTI  :**

Yalnız kırk dönüm tarla tebaa-i Osmaniye'den Hacı Hamid mahallesinden Gökdereliyan Abraham Ağanın Mart 328 tarihli senet mucibince taht-ı ziraat ve tasarrufunda olup terk ve tatil olmadığı halde 330 tarihinde vefatı cihetle zevcesi Sara ve oğlu Sahak ve kızları mezburun Rakil ve Liya ve Vanuhi'ye münhasır olup ba'de mezbure Sara'nın dahi 331 tarihinde vefatı hasebiyle oğlu merkum Sahak ve kızları mezburun Rakil ve Liya ve Vanuhi'ye intikal eylediği mahallesi ve karyesi tarafından mevrûd ilmühaberle vergi idaresinden mu'ti 28 Şubat 337 tarihli ve 2/79 numaralı ruhsat tezkeresi mucibince işbu senet intikalen verilmiştir.

| MUTASARRIFIN   İSİM   VE ŞÖHRETİ | MAHALL-İ VELÂDETİ | TARİH-İ VELÂDETİ | TABİİYET VE CEMAATİ | BABASININ TABİİYET VE İSİM VE ŞÖHRETİ | ANASININ TABİİYET VE İSMİ |
|---|---|---|---|---|---|
| Hacı Hamid mahallesinin 58 mesken numarasında mukayyit oğlu Sahak ve kerimeleri Rakil ve Liya ve Vanuhi | Adana Adana Adana Adana | 320 310 312 316 | Tebaa-i devlet-i âliyyeden Ermeni | Tebaa-i devlet-i âliyyeden Abraham | Tebaa-i devlet-i âliyyeden Sara |

Bâlâda muharrer evsâf ve hududu hâvî mal-ı gayr-ı menkul Defter-i Hâkânî'ce merkum ve mezburun uhdesine kaydedilmiş olduğunu mübeyyin işbu sened-i hâkânî tanzim ve ita kılındı. 28 Şubat 337

(pul, mühür ve imza)

**EXHIBIT I**
**66**

# EXHIBIT J

Haroutunian 003

## Imperial Instrument

| | |
|---|---|
| Registration Number | : 265 |
| Value | : 500 |
| Province | : Adana |
| Provincial Subdivision | : Adana |
| Township | : Adana |
| Village | : Incirlik |
| Realty Number | : 8084 |
| Category | : Arable field |
| Type | : From formerly state-owned land |
| Amount | : Three *atik dőnüm* only [1 dőnüm = approx. ¼ acre, 'atîk' = 'old'] |
| Boundary | : Eastward, private road; Westward, the Vayvayan field; Northward, the Markar heirs; Southward, the Incirlik road. |

## PRECAUTIONARY MEASURES TAKEN REGARDING REAL PROPERTY OF THE POSSESSOR

While the three *dőnüm* only, land from Gőkdereliyan Abraham Ağa, Ottoman citizen, of the Haji Hamid neighborhood was in his possession for agricultural use under instrument dated March 1910, and it was not abandoned nor suspended, by reason of his death in 1913 (this should be 1912), [the land] was transmitted to the aforesaid son Sahak and daughters Rakil and Liya and Vanuhi which the present instrument reflects in accordance with the permit memorandum dated 28 February 1919, numbered 2/79 bestowed by the tax office, as certified by voucher arrived from his village and neighborhood.

| Possessor's Name and Alias | Location of Birth | Date of Birth | Nationality and Ethnicity | Father's Nationality, Name and Alias | Mother's Nationality and Name |
|---|---|---|---|---|---|
| Son, Sahak and daughters Rakil and Liya and Vanuhi, registered in the dwelling number 58 in the neighborhood of Haji Hamid | Adana Adana Adana Adana | 1902 1892 1894 1898 | Ottoman Armenian | Ottoman Abraham | Ottoman Sara |

**EXHIBIT J**
67

Translated document by Fatima Sakarya *Sakarya* Sept. 13, 2010

[Haroutunian 003, page two]

This imperial instrument declares, sets forth and conveys that the real property, whose details and boundaries are written above, has been registered in the Imperial Registrar under the responsibility of the aforementioned [individuals].  28 February 1919

(paper stamp, ink stamp and signature)

**EXHIBIT J**
**68**

Translated document by Fatima Sakarya *Sakarya* Sept. 13, 2010

HAROUTUNIAN 003

## SENED-İ HÂKÂNÎ

**KAYIT NUMARASI** : 265

**KIYMETİ** : 500

**VİLÂYETİ** : Adana

**LİVASI** : Adana

**KAZASI** : Adana

**KARYESİ** : İncirlik

**EMLÂK NUMARASI** : 8084

**CİNSİ** : Tarla

**NEV'İ** : Arazi-i emîrîyeden

**MİKTARI** : Yalnız üç dönüm-i atîktir.

**HUDUDU** : Şarkan tarîk-i hâs, garben Vayvayan tarlası, şimalen Markar vereseleri, cenuben İncirlik tarîki.

**MAL-I GAYR-I MENKULÜN MUTASARRIFINCA  VUKUA GELEN VECH-İ TAKAYYÜDÂTI  :**

Yalnız üç dönüm tarla tebaa-i Osmaniye'den Hacı Hamid mahallesinden Gökdereliyan Abraham Ağanın Mart 328 tarihli senet mucibince taht-ı ziraat ve tasarrufunda olup terk ve tatil olmadığı halde 331 (330 olmalı) tarihinde vefatı hasebiyle oğlu merkum Sahak ve kızları mezburun Rakil ve Liya ve Vanuhi'ye intikal eylediği mahallesi ve karyesi tarafından mevrûd ilmühaberle vergi idaresinden mu'ti 28 Şubat 337 tarihli ve 2/79 numaralı ruhsat tezkeresi mucibince işbu senet intikalen verilmiştir.

| MUTASARRIFIN      İSİM   VE ŞÖHRETİ | MAHALL-İ VELÂDETİ | TARİH-İ VELÂDETİ | TABİİYET VE CEMAATİ | BABASININ TABİİYET VE İSİM VE ŞÖHRETİ | ANASININ TABİİYET VE İSMİ |
|---|---|---|---|---|---|
| Hacı Hamid mahallesinin 58 mesken numarasında mukayyit oğlu Sahak ve kerimeleri Rakil ve Liya ve Vanuhi | Adana Adana Adana Adana | 320 310 312 316 | Tebaa-i devlet-i âliyyeden Ermeni | Tebaa-i devlet-i âliyyeden Abraham | Tebaa-i devlet-i âliyyeden Sara |

Bâlâda muharrer evsâf ve hududu hâvî mal-ı gayr-ı menkul Defter-i Hâkânî'ce merkum ve mezburun uhdesine kaydedilmiş olduğunu mübeyyin işbu sened-i hâkânî tanzim ve ita kılındı. 28 Şubat 337

(pul, mühür ve imza)

**EXHIBIT J**
**69**

# EXHIBIT K



# EXHIBIT L

Boyadjian 002

### Imperial Ledger

| | | |
|---|---|---|
| Row Number | : | 433 |
| Ledger Month | : | March 1906 |
| Provincial Subdivision | : | Adana |
| Provincial District | : | Adana |
| Township | : | Yüreğir |
| Village | : | Incirlik |
| Locality | : | Davudlar |
| Category | : | Arable field |
| Type | : | From formerly state-owned land |
| Boundary | : | Eastward, Harih; Westward Haji Davud; Northward, stream; Southward, public road. |
| Amount | : | *Atik: dönüm(12)* [1 *dönüm* = approx. ¼ acre, 'atik' = 'old'], *evlek* (2) [1 *evlek* = ¼ *dönüm*] Twelve *dönüm* and two *evlek* , only. |
| Former Owner | : | Ottoman citizen Nazar Ağa, son of Kasbar Ağa |
| Granting Instrument | : | In accordance with the identification arrived from the aforementioned township and the instrument dated December 1905, it being made clear that the right of possession had not been abandoned or suspended, the right of possession has been conveyed without reservation. |
| Possessor | : | Half ownership right by Boyaciyan Mihran *Efendi* |
| Value | : | 1250 |
| Charge | : | 1250 |
| Nationality | : | Ottoman |

Until the setting out and granting of the[final] instrument, this temporary receipt is presented in the name of the Imperial Registrar, based upon the execution of the formal transactions and the receipt of forty four *kurush* and twenty *para* charge and tolls by the land registry, for the above described land.  26 March 1906.

(paper stamp, ink stamp and signature)

**EXHIBIT L**
**71**

Translated document by Fatima Sakarya   *Sakarya* Sept. 13, 2010

BOYADJIAN 002

### DEFTER-İ HÂKÂNÎ

| | |
|---|---|
| SIRA NUMARASI | : 433 |
| DEFTER-İ ŞEHR | : MART 324 |
| LİVA | : Adana |
| KAZA | : Adana |
| NAHİYE | : Yüreğir |
| KARYE | : İncirlik |
| MEVKİİ | : Davudlar |
| CİNSİ | : Tarla |
| NEV'İ | : Arazi-i mîrî |
| HUDUDU | : Şarkan Harih, garben Hacı Davud, şimalen dere, cenuben tarîk-i âmm. |
| MİKTARI | : Atîk: dönüm (12), evlek (2)yalnız on iki dönüm iki evlek. |
| SAHİB-İ EVVELİ | : Tebaa-i Devlet-i Âliye'den Kasbar Ağa mahdumu Nazar Ağa |
| CİHET-İ İTA-YI SENET | : Merkumun karyesi tarafından vürûd eden ilmühaber ile Kanun-ı evvel 323 tarihli senet mucibince hakk-ı tasarrufu terk ve tatil olunmadığı tebyin eylediği cihetle katiyen ferağından |
| MUTASARRIFI | : Boyacıyan Mihran Efendi, nısf hissesi |
| KIYMETİ: | : 1250 |
| BEDELİ | : 1250 |
| TABİYETİ | : Devlet-i Âliyye |

Bâlâda muharrer tarlanın muamelât-ı resmiyesi icra kılınmış ve kırk dokuz kuruş yirmi para harç ve rüsumu tapu sandığına teslim olunmuş olmakla senedinin tanzim ve itasına değin defter-i hâkânî namına işbu işbu muvakkat ilmühaber ita kılındı. 26 Mart 324

(pul, mühür ve imza)

EXHIBIT L
72

# EXHIBIT M

Boyadjian 001

Imperial Registrar

| | | |
|---|---|---|
| Row Number | : | 385 |
| Ledger Month | : | January 1905 |
| Provincial Subdivision | : | Adana |
| Provincial District | : | Adana |
| Township | : | Yüreğir |
| Village | : | Incirlik |
| Category | : | Arable field |
| Type | : | From formerly state-owned land |
| Boundary | : | Eastward, Harih; Westward, Haji Davud; Northward, Haji Davud; Southward, public road. |
| Amount | : | Atik: *dőnüm* (9) [1 *dőnüm* = approx. ¼ acre, 'atik' = 'old'], *Evlek* (2) [approx. ¼ *dőnüm*] Nine *dőnüm* and two *evlek* only. |
| Former Owner | : | Ottoman Citizen Nazaret Ağa, son of Kasbar Ağa |
| Granting Instrument | : | In accordance with the identification arrived from the aforementioned township and the instrument dated December 1904, it being made clear that the right of possession had not been abandoned or suspended, the right of possession has been conveyed without reservation. |
| Possessor | : | Half ownership right by Boyaciyan Mihran *Efendi* |
| Value | : | 500 |
| Charge | : | 2000 |
| Citizenship | : | Ottoman |

Until the setting out and granting of the[final] instrument, this temporary receipt is presented in the name of the Imperial Registrar, based upon the execution of the formal transactions and the receipt of seventy *kurush* charge and tolls by the land registry, for the above described land.  26 January 1905.

(paper stamp, ink stamp and signature)

**EXHIBIT M**
73

Translated document by Fatima Sakarya *[signature]* Sept. 13, 2010

BOYADJIAN 001

### DEFTER-İ HÂKÂNÎ

**SIRA NUMARASI:** 385

**DEFTER-İ ŞEHR**  : KANUN-I SÂNÎ 323

**LİVA**  : Adana

**KAZA**  : Adana

**NAHİYE**  : Yüreğir

**KARYE**  : İncirlik

**MEVKİİ**  : Davudlar

**CİNSİ**  : Tarla

**NEV'İ**  : Arazi-i emîrî

**HUDUDU**  : Şarkan Harih, garben Hacı Davud, şimalen Hacı Davud, cenuben tarîk-i âmm.

**MİKTARI**  : Atîk: dönüm (9), evlek (2)yalnız dokuz dönüm iki evlek.

**SAHİB-İ EVVELİ**  : Tebaa-i Devlet-i Âliye'den Kasbar Ağa mahdumu Nazaret Ağa

**CİHET-İ İTA-YI SENET**  : Merkumun karyesi tarafından vürûd eden ilmühaber ile Kanun-ı evvel 322 tarihli senet mucibince hakk-ı tasarrufu terk ve tatil olunmadığı tebyin eylediği cihetle tasarruf hissesinin katiyen ferağından

**MUTASARRIFI**  : Boyacıyan Mihran Efendi, nısf hissesi

**KIYMETİ:**  : 500

**BEDELİ**  : 2000

**TABİİYETİ**  : Devlet-i Âliyye

Bâlâda muharrer tarlanın muamelât-ı resmiyesi icra kılınmış ve yetmiş kuruş harç ve rüsumu tapu sandığına teslim olunmuş olmakla senedinin tanzim ve itasına değin defter-i hâkânî namına işbu muvakkat ilmühaber ita kılındı. 26 Kanun-ı sânî 323

(pul, mühür ve imza)

# EXHIBIT N

**Translation Certification**

I hereby certify that I am fluent in the modern Turkish language and English and

that I have translated the attached document to the

best of my ability and experience as a translator of spoken Turkish and

Ottoman Turkish as well, relying on my experience as an attorney.  The source document

was apparently transcribed from original Ottoman Turkish.  Any

misspellings, errors, or omissions are indicated, when noted, but

I cannot guarantee that the translation is completely free

from any errors or misreading or omissions.

Fatima Sakarya

Attorney at Law State of New Jersey

Approved Turkish interpreter in New Jersey and Oregon court system

Address:  6036 164th St. #17, Surrey, BC  V3S 3Y5 CANADA

anatolialanguage@gmail.com

Date: September 14, 2010

Signed and sworn before me on this 14 day of September, 2010

Notary Public

NORMAN W. WITT
Notary Public
5661  176A Street
Surrey, BC  V3S 4G8
(604) 576-8468

**EXHIBIT N**

75

# EXHIBIT O

*Talat ordering the selling of Armenia properties left behind + you do that "under the color of law"*

DH. SFR, 59/239
Bab ul Ali
Ministry of Interior
Directorate of Deportation and Tribal Relocation
General: # 813

Ciphered

*To the Tasfiye Komisyon [Commissions of Clearance and Settlement] of: Erzerum, Adana, Ankara, Bitlis Aleppo, Diyarbekir, Sivas, Trepizond, Maamuret Al Aziz, Konya, and Edirne Vilayets [Provinces] and the Mutassarifates of: Urfa, Janik, Karesi, Kayseri [Caesarea], [Shabin] Karahisar, Eskishehir, Nigde, Kutahya, Marash, and the areas of Tekfurdagh, Adana, Jebel Bereket, Kozan [Sis], Yozgat, Ankara, Erzerum, Bitlis, Aleppo, Marash, Antakia, Hudavendigar, Gemlik, Bilejik, Diyarbekir, Sivas, Marzifon, Tokat, Samson, Ordu, Trepizond, Konya, Maamuret Al Aziz, Izmit, Adabazar, Eskishehir, Sivrihisar, Kayseri, Develi, Nigde, [Shabin] Karahisar, and Urfa.*

It is ordered that special companies be formed for the real and temporal Armenian properties left behind by the deportees in order to give their ownership to Muslims under the color of law. These companies must remain in effect and their boards must be elected from righteous and able citizens. Effort must be utilized so that the shares of these companies will not b priced over one Turkish Lira, and that the shares will not fall into the hands of foreign investors. We urge you to keep us informed of all details regarding these actions.

November 24, 1915

Minister of Interior
[Talaat]
Signature

EXHIBIT O
76

**DH. ŞFR, 59/239**

Bâb-ı Âlî
Dâhiliye Nezâreti
İskân-ı Aşâyir ve Muhâcirîn Müdîriyeti
Umûm : 813

*Şifre*

*Erzurum, Adana, Ankara, Bitlis, Haleb, Hüdâvendigâr, Diyârbekir, Sivas, Trabzon, Ma'mûretülazîz, Konya, Edirne Vilâyetleriyle Urfa, İzmit, Canik, Karesi, Kayseri, Karahisâr-ı Sâhib, Eskişehir, Niğde, Kütahya, Mar'aş Mutasarrıflıklarına ve Tekfurdağı, Adana, Cebel-i Bereket, Kozan, Yozgat, Ankara, Erzurum, Bitlis, Haleb, Mar'aş, Antakya, Hüdâvendigâr, Gemlik, Bilecik, Diyârbekir, Sivas, Merzifon, Tokad, Samsun, Ordu, Trabzon, Konya, Ma'mûretülazîz, İzmit, Adapazarı, Eskişehir, Sivrihisâr, Kayseri, Develü, Niğde, Karahisâr-ı Sâhib, Urfa Tasfiye Komisyonları Riyâsetine*

Ermenilerden metrûk emvâl-i menkûlenin tûl müddet muhâfazasıyla ziyâ'dan vikâyesi ve memleketimizde İslâm mü'esseselerinin teksîri zımnında müslümanlardan mürekkeb olmak üzere şirketler teşkîliyle emvâl-i menkûlenin şerâ'it-i münâsebe ile kendilerine i'tâsı şirketlerin te'mîn-i bekâsı için şirket mü'essis ve hey'et-i idâresiyle mümessillerinih erbâb-ı nâmus ve iktidârdan intihâbına dikkat olunması hisse senedâtına esnâf ü zürrâ'dan iştirâk ettirilebilmek için senedlerin yarım veya bir liralık olmak üzere ihrâcı sermâyenin ecnebi ellere düşmemesi için nâma muharrer olması ve buna makîs şerâ'it-i sâ'irenin ittihâzıyla İslâm ahâli beyninde de hayat-ı ticâretin inkişâfına ihtimâm ve bu bâbdaki teşebbüsât ve netâyic-i icrâ'ât ve mu'âmelâtdan peyder pey nezârete de ma'lûmât i'tâ buyurulması.

Fî 24 Kânûn-ı Evvel, sene [1]331

*Dâhiliye Nâzır*
*İmza*

# EXHIBIT P

Passeport d'Hagop Handjian portan' mention " Retour interdit ", délivré par la elle République turque, le 19 juillet 1924, Centre du Patrimoine Arménien, \ de Valence



Nom du père *Eghia*

Qualité ou profession *Mécanicien*

Lieu et date de naissance

en *1906*

Domicile

Destination *France*

But et son voyage *Retour interdit*

République turque.

AU NOM DU GOUVERNEMENT
DE LA GRANDE ASSEMBLÉE
NATIONALE DE TURQUIE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV10- 9596 SJO (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
David Schwarcz, Esq., K. Lee Boyd, Esq.
TODD, FERENTZ, SCHWARCZ & RIMBERG LLP
6310 San Vicente Blvd., Suite 360
Los Angeles, CA  90048

**◘ORIGINAL**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alex BAKALIAN et al., | CASE NUMBER |
| PLAINTIFF(S) | **CV10·09596** SJO (JEMx) |
| v. | |
| REPUBLIC OF TURKEY et al., | **SUMMONS** |
| *SEE ATTACHED* DEFENDANT(S). | |

TO:   DEFENDANT(S): <u>REPUBLIC OF TURKEY; CENTRAL BANK OF THE REPUBLIC OF</u>
<u>TURKEY; T.C. ZIRAAT BANKASI</u>

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>David Schwarcz or K. Lee Boyd</u>, whose address is <u>TFSR LLP, 6310 San Vicente Boulevard, Suite 360, Los Angeles, CA  90048</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   **DEC 1 5 2010**

By: _____
    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*



DAVID R. SCHWARCZ, ESQ. (SBN 152896)
   (Dschwarcz@tfsr-law.com)
KATHRYN LEE BOYD, ESQ. (SBN 189496)
   (leeboyd.law@gmail.com)
RAJIKA L. SHAH, ESQ. (SBN 232994)
   (Rajika@tfsr-law.com)
**TODD, FERENTZ, SCHWARCZ & RIMBERG, LLP**
6310 San Vicente Boulevard, Suite 360
Los Angeles, California 90048
Phone: (323) 302-9488
Fax: (323) 931-4990

VARTKES YEGHIAYAN, ESQ. (SBN 41773)
   (vartkesy@sbcglobal.net)
**YEGHIAYAN & ASSOCIATES**
535 N. Brand Boulevard, Suite 270
Glendale, California 91203
Phone: (818) 242-7400
Fax: (818) 242-0114

MICHAEL BAZYLER, ESQ. (SBN 84398)
   (bazyler@aol.com)
**CHAPMAN UNIVERSITY SCHOOL OF LAW**
One University Drive
Orange, California 92866
Phone: (714) 628-2500
Fax: (714) 628-2576

Attorneys for PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

CV10- 09596 SJO(JEMx)

|  |  |
|---|---|
| Alex BAKALIAN; Anais HAROUTUNIAN; and Rita MAHDESSIAN, <br><br> Plaintiffs, <br><br> vs. <br><br> REPUBLIC OF TURKEY; CENTRAL BANK OF THE REPUBLIC OF TURKEY; T.C. ZIRAAT BANKASI; DOES 1-100, <br><br> Defendants. | Case No. _____ <br> **COMPLAINT FOR** <br> **1. UNLAWFUL EXPROPRIATION;** <br> **2. UNJUST ENRICHMENT;** <br> **3. VIOLATION OF CAL.** *CIVIL CODE* § 1708; <br> **4. CONSTRUCTIVE TRUST;** <br> **5. ACCOUNTING;** <br> **6. DECLARATORY RELIEF;** <br><br> **DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED
CLERK, U.S. DISTRICT COURT
DEC 15 2010
CENTRAL DISTRICT OF CALIFORNIA
BY ____ DEPUTY

©COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
BAKALIAN, Alex; HARTOUNUNIAN, Anais; MAHDESSIAN, Rita

**DEFENDANTS**
REPUBLIC OF TURKEY; CENTRAL BANK OF THE REPUBLIC OF TURKEY; T.C. ZIRAAT BANKASI

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Todd, Ferentz, Schwarcz, & Rimberg, 6310 San Vicente Blvd, Suite 360, Los Angeles, CA 90048, Telephone No. (323) 302-9488
Yeghiayan & Associates, 535 N. Brand Ave., Glendale, CA 91203, Telephone No. (818) 242-7400

Attorneys (If Known)
David Schwarcz (SBN 152896); Kathryn Lee Boyd (SBN 189496); Rajika Shah (SBN 232994); Vartkes Yeghiayan (SBN 41773); Michael Bazyler (SBN 84398)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☑ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No        ☑ MONEY DEMANDED IN COMPLAINT: $63,875,000 + rent + costs

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sections 1330, 1604, 1605. Tort actions arising from unlawful expropriation of real property

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☑ 290 All Other Real Property | | | | |

## CV10·09596

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| HAROUTUNIAN, Anais (Los Angeles County) MAHDESSIAN, Rita (Los Angeles County) | BAKALIAN, Alex (District of Columbia) |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | REPUBLIC OF TURKEY (Republic of Turkey); CENTRAL BANK OF THE REPUBLIC OF TURKEY (Republic of Turkey); T.C. ZIRAAT BANKASI (Republic of Turkey) |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Republic of Turkey for all claims |

\* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** K. Lee Boyd /RLS      Date December 14, 2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |